## Bennett (et al., Appellant), *v.* Coyne & Evans Motor Company, Inc.

Argued May 2, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Robert F. Levin,* with him *Leonard S. Levin,* for appellant.

*I. A. Melnick,* with him *Joseph A. Rubinstein,* for appellee.

OPINION BY STADTFELD, J., July 2, 1941:

This is an appeal by Bennett Brothers Realty Corporation, plaintiff in an interpleader issue, from a judgment in favor of Coyne & Evans Motor Co., Inc., defendant in said issue.

On May 1, 1940, Coyne & Evans Motor Co., Inc., recovered a judgment in the sum of $649.89, in an action of assumpsit against Louis M. Bennett and Sol Bennett, individually and trading as partners as "Bennett Brothers" and "Centre Car & Truck Sales." On this judgment an execution was issued which was

levied inter alia, on certain second-hand trucks, automobiles and other personal property as the property of the defendants.

The plaintiff named in the present interpleader action as the claimant, to-wit, Bennett Brothers Realty Corporation, claimed the goods. It alleged that the realty corporation had purchased them from Century Finance Company which had come into possession of the wrecked auto parts by virtue of an execution sale on a judgment that the finance company had against Louis M. Bennett and Sol Bennett, partners, trading as Centre Car & Truck Sales. The realty corporation further alleged in its petition for interpleader and presented to the jury testimony to the effect that the Century Finance Company, having become vested by sheriff's sale on April 6, 1940, with title to the wrecked auto parts, sold that personal property by bill of sale to the realty corporation. The jury found a verdict in favor of the defendant, Coyne & Evans Motor Co., Inc., in the interpleader issue. From the judgment entered on the verdict, this appeal was taken.

The Bennett Brothers Realty Corporation was incorporated in 1934, but, so far as the record indicates, never engaged in the real estate business. Two of the incorporators were Louis M. Bennett and Sol Bennett, defendants in the original assumpsit action in which Coyne & Evans Motor Co., Inc. obtained its judgment; they owned 96% of the capital stock of the corporation. These two defendants were also the defendants in the original assumpsit action in which Century Finance Company had obtained its judgment. These two were in full and absolute control of the realty corporation's business and property. They signed checks, bought and sold everything. The realty corporation held no stockholders' meetings, kept no minutes and made no reports to any other persons alleged in interest. It had no separate office or place of business from that of Bennett Brothers and Centre Car & Truck Sales where they were

engaged in the sale of second-hand trucks and automobiles and parts. It had no name or sign at or over its place of business. The only signs were "Bennett Brothers" and "Bennett Auto Wreckers." The goods purchased from Century Finance Co. and involved in this suit were left on the same premises where they had been prior to the sheriff's sale. The bill of sale for these goods shows a consideration of one thousand dollars and recites the acknowledgment of an indebtedness of Bennett Realty Corporation to the Century Finance Co. of $2139.50. These are the same goods which were sold at sheriff's sale for $330 and three days thereafter resold to the Realty Corporation for $2139.50, one thousand dollars of which sum was paid immediately allegedly by the Realty Corporation and the balance acknowledged as an indebtedness of the latter.

Louis Bennett was called as a witness on behalf of plaintiffs and testified that he is president of the Realty Corporation and his brother, Sol Bennett, its secretary and treasurer, "We (Louis and Sol) are the owners of the Realty Corporation. Q. And you and your brother Sol were ...... A. Were the corporation. Q. Were the corporation? A. Yes, sir."

When questioned as to the source of the money paid to the Century Finance Company, he was very evasive. By Mr. Melnick: "Q. Where did the corporation get the $2100 to pay the Century Finance Company? A. Well, they got it some place. Q. Where? A. They borrowed the money and they got it. Q. Borrowed it from whom? A. Different friends. Q. Who? A. I can't tell you. Do I have to tell you? Q. Yes. How much money did you put into it? A. Into what? Q. Into the corporation to pay the $2100? A. I didn't put anything into it. Q. You are the treasurer? A. Well, I didn't put anything into it."

Coyne & Evans Motor Company, Inc., defendant in the interpleader issue, questioned the bona-fides of the

alleged title of Bennett Brothers Realty Corporation to the personal property involved in this suit. The trial court submitted the question to the jury in a fair and comprehensive charge which is not questioned by appellant. The jury found in favor of the defendant. The questions in the case were questions of fact which necessarily had to be submitted to the jury. The request for binding instructions was properly refused as also the motion for judgment n. o. v.

In *Kulka v. Nemirovsky*, 321 Pa. 234, 182 A. 692, there is a collection and full discussion of the cases wherein the courts did, for the purpose of effecting substantial justice and protecting innocent parties, look through the corporate form and regard the corporation and the individuals owning its stock as identical. In that case, the Supreme Court held that where a partnership transfers its assets to a corporation, and there is a substantial identity between the stockholders of the corporation and the persons who were interested in the partnership, creditors of the partnership may follow the assets into the corporation and enforce payment of their claims therefrom.

The same principle applies where the corporation, substantially identified with the partnership, acquires title to assets of the partnership from a purchaser at execution sale of the partnership assets. And if, as in the instant case, the property purchased at execution sale is found, upon looking through the corporate form, to have been resold to the former owners and left in their possession, it is liable to another execution against such debtors. See, 23 C. J. §102, p. 354, and *Dick v. Cooper*, 24 Pa. 217.

Quoting from the opinion of the court below, by LENCHER, J.: "The suggestion is strongly stressed that the realty corporation should legally be held to have adopted the debt of the partnership, but even with that legal possibility eliminated completely from the case,

all of the other testimony is overwhelmingly sufficient to justify the jury in rejecting the realty corporation's claim and in concluding that in fact the wrecked auto parts never actually left the real ownership of—as well as physical possession of—Louis M. Bennett and Sol Bennett. And on the premises then still used as a wrecking company partnership the goods were found. The realty corporation apparently served only one function, as a convenient screen behind which Louis M. Bennett and Sol Bennett could hide their real ownership of—as well as apparent possession of—the goods claimed. The case does not turn on the question of ultra vires. The purchase of used wrecked auto parts by a realty corporation was competent testimony as one of a long chain of many suspicious facts and circumstances, and those facts and circumstances presented by competent testimony overwhelmingly sustain the finding of the jury in favor of the defendant in the interpleader and against the claim of the realty corporation."

We believe the testimony fully sustains the verdict and that the court below properly entered judgment thereon.

Judgment affirmed.