**ALEXANDER & BALDWIN, INC.,
Plaintiff,**

v.

**PEAT, MARWICK, MITCHELL & CO.,
and Hauser, O'Connor & Hylind,
Defendants.**

**PEAT, MARWICK, MITCHELL & CO.
et al., Defendants and Third-
Party Plaintiffs,**

v.

**ACME FAST FREIGHT, INC., et al.,
Third-Party Defendants.**

**No. 73 Civ. 2220–CLB.**

United States District Court,
S. D. New York.
Oct. 18, 1974.

See also, D.C., 385 F.Supp. 230.

Kelley, Drye, Warren, Clark, Carr & Ellis, New York City, for third-party defendants Thomas A. Bradley, Jr., Estate of Thomas A. Bradley, Rosemary B. Corroon, Kate B. Dishon, Jeanne B. Kelly and Irene B. Parker.

Shearman & Sterling, New York City, for defendant and third-party plaintiff Peat, Marwick, Mitchell & Co.

Breed, Abbott & Morgan, New York City, for plaintiff Alexander & Baldwin, Inc.

D'Amato, Costello & Shea, New York City, for defendant and third-party plaintiff Hauser, O'Connor & Hylind.

Tibor Sallay, New York City, for third-party defendant Acme Fast Freight, Inc.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By motion filed September 20, 1974 and argued October 15, 1974, third-party defendants Acme Fast Freight, Inc. ("New Acme") and Acme Fast Freight of Canada, Ltd. ("Acme-Canada") move to dismiss the First Amended Third-Party Complaint as to them on grounds more particularly set forth in the Notice of Motion, which for simplicity may be styled as a defense of mistaken identity.

In the Underlying Complaint, Alexander & Baldwin, Inc. ("Alexander") seeks damages from Peat, Marwick, Mitchell & Co. ("Peat") and others, Certified Public Accountants, arising out of a claimed fraudulent certification of financial statements of corporations which Alexander purchased from the Bradley third-party defendants on June 30, 1969. In the Third-Party Complaint Peat seeks contribution from the Acme third-party defendants and the Bradleys as joint tortfeasors, should it be held liable to Alexander.

■ Acme-Canada is the same corporate entity, originally incorporated in 1952, for which Peat acted as auditors and accountants in 1969. This fact was admitted on the oral argument of the motion. The contention, insofar as concerns Acme-Canada, that it did not "assume the liability" for Peat's claim complained of, is entirely without merit.

No assumption was necessary. Acme-Canada was and is an original party whose actions or inactions are relied on as giving rise to liability. No subsequent transactions between or among plaintiff, Acme-Canada, and its present shareholders, or its parent, or others, to which Peat was not a party, can affect Peat's claim in any way. The motion of Acme-Canada to dismiss the Third-Party Complaint on that ground is denied.

New Acme was incorporated under a slightly different name in Delaware on February 20, 1973, long after June 30, 1969, the last date of the acts complained of.

Previously, a corporation of the same name ("Old Acme") existed in Delaware at least prior to June 1, 1935.[1] It was Old Acme which had all transactions with Peat which are the subject of the Third-Party Complaint. On July 31, 1973 it changed its name, and was thereafter dissolved in November, 1973 under the name of "Acme Freight, Inc." It remains subject to suit.

New Acme is a different entity. By a purchase agreement dated June 7, 1973, and as a result of antecedent agreements incorporated therein, Alltrans, Incorporated, purchased from Old Acme all the capital stock of New Acme. Seller warranted a *pro forma* balance sheet of New Acme which includes no liability to Peat, contingent or otherwise. Should Peat prevail on its Third-Party Complaint against New Acme, a claim should lie for breach of such warranty, also a claim to full indemnification under ¶ 12.5 of the purchase agreement, and indeed, possibly a claim for fraud. See ¶ 11 of affidavit of Sir Peter Abeles, sworn to May 30, 1974, read in support of the motion.

On February 22, 1973 by agreement, later amended May 11, 1973, Old Acme transferred to New Acme, effective upon Interstate Commerce Commission approval, all its "operating rights", i. e., the permits, franchises, licenses, or certificates from various federal and state regulatory authorities which allowed it to engage in business as a motor carrier or freight forwarder. Also transferred were "all current assets . . . excluding future income tax benefits" (Agreement ¶ 3a.1); and all investments in named subsidiaries, all machinery, equipment, terminals, offices and leasehold improvements. New Acme assumed some but not all of Old Acme's liabilities. Old Acme received all of the capital stock of New Acme in consideration for the transfer. This was the stock sold to Alltrans, Incorporated. After the transfer, which became effective as of July 31, 1973, the same day on which Alltrans purchased, Old Acme was a relatively naked shell; it had disabled itself from doing business but, because of its ownership of all of the shares of New Acme, was not insolvent. New Acme took the name of Old Acme, which, as noted, changed its name to Acme Freight, Inc., and has since dissolved.

None of the parties to the transactions by which Alltrans, Incorporated acquired New Acme, intended that New Acme assume or become responsible for any contingent liability of Old Acme to Peat. The existence of the claim was known, at least to Old Acme and its parent Alexander & Baldwin, Inc., at the time of the closing, and at all material times. Alltrans claims it did not know.

■ From all of the circumstances set forth in the agreements and related documents submitted in support of this motion, it is clear that New Acme is in all respects a successor in interest of the entire business of Old Acme. There is a complete continuity of name, operating rights, personnel and equipment in the successor. The predecessor has given up business, and ceased to exist. As such successor, under the facts shown, it is or may be liable for its predecessor's torts, without the necessity of any

1. See Acme Fast Freight, Inc. v. United States, 30 F.Supp. 968 (S.D.N.Y.1940), aff'd. 309 U.S. 638, 69 S.Ct. 810, 84 L.Ed. 993.

agreement to assume all such liabilities. The rule is stated negatively in 15 Fletcher, Cyclopedia of Corporations § 7122, et seq. (1973 rev.) as follows:

"The purchasing or transferee company, that is to say, is not liable on the other company's obligations merely by reason of its succession to such company's property. . . . An express agreement . . . or one that can be implied, . . . to assume the other company's debts and obligations, is necessary; or the circumstances must warrant a finding that there was a consolidation or merger of the corporations, . . . or that the transaction was fraudulent in fact, . . . *or that the purchasing company was a mere continuation of the selling company;* . . . the foregoing constitute the so-called exceptions to the general rule. . . ." [Footnotes omitted] [Italics added]

The foregoing rule was stated as follows in In Re Johnson-Hart Co., 34 F.2d 183, 184 (D.Minn.1929), a pre-*Erie* case:

"It seems to have been fairly well settled that, where the circumstances attending the succession of a new corporation to the assets and business of an old corporation warrant the conclusion that the new corporation is simply a continuation of the old, it becomes liable for the debts of the corporation to the business and assets of which it has succeeded. See Skirvin Operating Co. v. Southwestern Electric Co., 71 Okl. 25, 174 P. 1069, 15 A.L.R. 1104, and cases referred to in note; also American Railway Express Co. v. Commonwealth of Kentucky, 190 Ky. 636, 228 S.W. 433, 30 A.L.R. 543, and note."

Old Acme had its principal office at Scranton, Pennsylvania, and that was the place of closing under the agreement by which New Acme took over Old Acme's business. Pennsylvania recognizes as valid the successor liability here sought to be imposed on New Acme. In Kulka v. Nemirovsky, 321 Pa. 234, 182 A. 692, 693–694 (Pa.Sup.1936) it was held:

"Recently in Merwine v. Mt. Pocono Light & Improvement Co., 304 Pa. 517, 523, 156 A. 150, 151, we stated: 'A person having a cause of action capable of adjustment and liquidation upon a trial is a creditor. * * * It is immaterial whether the cause arose out of contract or tort.'

We have frequently considered the liability of a successor corporation for a debt of the corporation from which it derived all of its assets. In Montgomery Web Co. v. Dienelt, 133 Pa. 585, 19 A. 428, 19 Am.St.Rep. 663, we held that, where the shareholders of the new corporation are the same as the old corporation, the former cannot hide behind the latter so as to prevent a creditor from asserting the identity as a fact for the purpose of securing payment out of the property which was liable therefor under one name and which is still liable under another. Where such identity of shareholders exists, creditors cannot be forced to forego their rights against the tangible assets of the old company, though in the ownership and possession of the new company. They may follow the assets into the hands of the transferee. To impose such liability, it was stated in Art Society of Pittsburgh v. Leader Publishing Co., 60 Pa.Super. 548: 'It should appear that these officers and stockholders [of the new corporation] had such interest in the old company that a creditor could assert their identity, that the property was partly theirs under one name and still theirs under another, so that in fact the transaction was to a certain extent merely a change of name, and the new stockholders were not purchasers for value.'

Where individuals have transferred their property to a corporation whose shares were owned exclusively by them, we have likewise disregarded the fiction of a corporate entity separate and distinct from its members, and have probed to discover whether the

corporation was not, in fact, the individual cloaked in the guise of a corporation. See Atlas Portland Cement Co. v. American Brick & Clay Co., 280 Pa. 449, 456, 124 A. 650; Delphia Knitting Mills Co. v. Richards, 62 Pa.Super. 9. In Pennsylvania Knitting Mills of Reading v. Bibb Mfg. Co., 12 Pa.Super. 346, the court stated: 'When individuals or corporations transfer their property to a new corporation, substantially owned and controlled by the transferers, the new company takes the property subject to the claims of the nonassenting creditors of the transferers.' " [Omissions indicated by Asterisk in original.]

To the same effect is Bennett v. Coyne & Evans Motor Co., 145 Pa.Super. 278, 21 A.2d 125 (1941); Miller v. South Hills & Co., 334 Pa. 293, 6 A.2d 92 (1939); Satler v. Rice, 184 Pa.Super. 550, 135 A.2d 775 (1957); United States v. Beaver Run Coal Co., 99 F.2d 610 (3rd Cir. 1938). New York recognizes the same rule. See Reif v. Williams Sportswear, Inc., 9 N.Y.2d 387, 214 N.Y.S.2d 395, 174 N.E.2d 492 (1961).

Cases cited by New Acme in which the foregoing general principle was not followed are not in point. Movant places primary reliance on Kloberdanz v. Joy Mfg. Co., 288 F.Supp. 817 (D.Colo.1968) in which it appeared that Joy, already an existing business with substantial assets, purchased the trade name and related assets of Web-Wilson, Inc., a completely unrelated manufacturer of a product line complementary to Joy's products. Thereafter it used the trade name for a limited part of its line. Seller continued in business for ten months, leasing real estate and investing its funds. It had substantial assets not sold to Joy. No officers of Web-Wilson became engaged in Joy's enterprise. In the instant case, New Acme after the transfer had the same president who had served Old Acme, it hired substantially the same personnel, had no business except that of Old Acme, was a wholly owned subsidiary of Old Acme at the time of the agreement, and Old Acme thereafter had no active business. The circumstances of *Kloberdanz*, involving a mere purchaser of some assets, are in marked contrast to the instant case, in which New Acme appears to be for all purposes the successor of the name, good will, operating rights, personnel and business of Old Acme.

Nor is it relevant, as claimed heatedly and repeatedly in New Acme's papers, if Alexander & Baldwin did not disclose the known intention of Peat to seek contribution. Nothing which took place in the negotiations between Alexander & Baldwin, Inc. and Alltrans, Incorporated, could bind non-parties such as Peat.

While the presence of New Acme in this litigation may be unnecessary, and lead merely to circuity of actions,[2] we see no basis to dismiss the Third-Party Complaint.

The claim of Acme-Canada of improper service of process was withdrawn at the hearing on this motion.

In all other respects, the motions are denied.

So ordered.

---

2. It seems clear that to the extent any recovery by Alexander & Baldwin, Inc. against Peat is a basis for contribution by New Acme or Acme-Canada, an action for full indemnity by agreement, or even in the absence of agreement, lies in favor of those contributors and against Old Acme, and Alexander & Baldwin, Inc. Counsel in this litigation should seek a practical basis by which this additional expense and inconvenience could be avoided. Failing such a practical resolution, at the very least, Old Acme should be added as a third-party defendant so as to complete the circle in this lawsuit leading from plaintiff to defendants and back to plaintiff again. If the addition of such additional party cannot be stipulated a prompt motion should be made on notice for such relief.