ESTATE OF JOHN B. LEWIS, HARRIET S. W. LEWIS, JOHN B. LEWIS, JR., ARTHUR H. W. LEWIS, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6901.   Promulgated March 14, 1946.

*James F. Armstrong, Esq.,* for the petitioners.
*A. J. McDowell, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: Petitioners' argument is that the distribution involved was in complete liquidation of the old company and that the gain realized is taxable as a capital gain by virtue of section 115 (c)

of the Internal Revenue Code.[1] The result, they say, is not made different by the fact that some of the assets of the old company were transferred to the new company in exchange for the latter's stock. Respondent's position is that there was in fact a reorganization, and that the gain realized has the effect of a taxable dividend within the meaning of section 112 (c) (2) of the code,[2] since it is not in excess of the money received by petitioners and not in excess of the accumulated earnings and profits of the old company.

The facts, briefly reviewed, are that the old company in the first part of 1941 was engaged in three separate lines of business. About the middle of the year it sold two branches of its business outright for cash and marketable securities. Thereafter, the old company was in possession of a considerable amount of cash and liquid assets, in addition to the operating assets and properties used in the chemical manufacturing business. Toward the end of the year, on December 27 to be exact, the old company voted to transfer some of the cash and the property used in the chemical manufacturing business to a new corporation to be organized on or about December 29. The new company was organized on December 29 and the said assets were transferred to it by the old company in exchange for all the stock of the new company and the assumption of the liabilities of the old company. On the same day the old company was liquidated by the distribution of its remaining assets, consisting principally of cash and marketable securities and the stock of the new company, to petitioners

---

[1] SEC. 115. DISTRIBUTION BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. \* \* \*

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5); or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

\* \* \* \* \* \* \*

as trustees of the estate, who were the sole stockholders of the old company, in complete cancellation and redemption of all the stock of the old company.

One of the statutory definitions of the term "reorganization" is "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred." Sec. 112 (g) (1) (D). Here the old company transferred a part of its assets to the new company, and immediately thereafter the old company or its shareholders were in "control" of the new company, as. that term is defined in section 112 (h). Clearly, therefore, what occurred here exactly fits the statutory definition of a reorganization.

But even so, the petitioners urge, there was no plan of reorganization. They contend that the plan was simply one of complete liquidation of the old company and that the new company was organized merely to facilitate that liquidation. Do the facts bear out the petitioners' contention? The testimony shows that one of the reasons for the transfer of assets from the old company to the new was the wish to continue the chemical manufacturing business. It does not appear that the new company is liquidating or disposing of the assets transferred to it, or that it was formed for that purpose. In *George D. Graham*, 37 B. T. A. 623, upon which petitioners rely, the new company, to which the old company in liquidating transferred approximately 5 percent of its assets, was organized, not to carry on any business enterprise, but to liquidate the remaining assets of the old company. It proceeded to do so and, having completed the undertaking within four years after the transfer, was then itself voluntarily dissolved. To assert that the primary purpose in this case was the complete liquidation of the old company and that the organization of the new company was but an incident thereof is to obscure the essential nature of the transaction. From the evidence, it seems to us that the real end desired was not complete liquidation, but rather partial liquidation. There was no purpose to wind up the business completely. The chemical manufacturing business, one of the three lines of business formerly conducted by the old company, was to be continued.

After the December 1941 transactions the new company had the same stockholders as the old and was engaged in the same chemical manufacturing business, using the operating assets and properties that had belonged to the old company. So far as the "plan" is concerned, it is of course unnecessary that there be a formal written document embodying it, for it is sufficient if the facts and circumstances indicate that a plan of reorganization existed. *William H. Redfield,*

34 B. T. A. 967. We conclude that there was a plan of reorganization within the meaning of the statute and that the distribution to petitioners in liquidation of the old company was but one step in the integrated transaction. *Richard H. Survaunt*, 5 T. C. 665; *Love* v. *Commissioner*, 113 Fed. (2d) 236, affirming 39 B. T. A. 172.

Section 112 (b) (3) of the code provides that no gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. On December 29, 1941, petitioners exchanged their stock in the old company for stock in the new company and other property (i. e., cash, notes, and other stocks and bonds). Had they received only the stock of the new company in exchange, section 112 (b) (3) would have operated to prevent recognition of gain or loss. Section 112 (c) (1) provides, however, that if the exchange would be within section 112 (b) (3) were it not for the fact that money or other property besides the stock was received, then the gain is to be recognized partially, that is, in an amount not in excess of the money and the fair market value of the other property. Here the gain, $66,107.30, was less than the amount of the cash and the value of the other property received by petitioners, and it is therefore to be recognized in its entirety.

Section 112 (c) (2) then provides that if a distribution made in pursuance of a plan of reorganization is within the provisions of section 112 (c) (1)—as is the distribution in the instant case—but has the effect of the distribution of a taxable dividend, so much of the gain recognized as is not in excess of his ratable share of accumulated earnings and profits shall be taxed to each distributee as a dividend. Petitioners owned all the stock of the old company, and the gain recognized was not in excess of the accumulated earnings and profits of the old company at the time of distribution. The question therefore is whether the distribution "has the effect of the distribution of a taxable dividend." We think the answer must be that it has. See *Commissioner* v. *Bedford*, 325 U. S. 283, and cases therein cited. There the Supreme Court said that the definition of "dividend" in section 115 (a), i. e., "any distribution made by a corporation to its shareholders * * * out of its earnings or profits accumulated after February 28, 1913, * * *" is infused into section 112 (c) (2). It held that a distribution of earnings and profits pursuant to a reorganization has the effect of a distribution of a taxable dividend within section 112 (c) (2).

It follows that respondent did not err in taxing the gain as a dividend under section 112 (c) (2).

*Decision will be entered for the respondent.*