ESTATE OF JOHN B. LEWIS, HARRIET S. W. LEWIS, JOHN B. LEWIS, JR., ARTHUR H. W. LEWIS, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6901. Promulgated June 10, 1948.

*James F. Armstrong, Esq.*, and *Walter F. Gibbons, Esq.*, for the petitioners.

*Melvin L. Sears, Esq.*, for the respondent.

1084

OPINION.

ARUNDELL, *Judge*: The origin of the so-called "business purpose" requirement for corporate reorganizations, as recognized in the opinion of the Circuit Court, is the case of *Gregory* v. *Helvering*, 293 U. S. 465, where the Supreme Court said of the predecessor of code section 112 (g) (1) (D): [1]

When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made "in pursuance of a plan of reorganization" (section 112 (g)) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either * * *.

There the new corporation to which assets were transferred was organized, not to conduct any part of the business of the old corporation, but merely to serve as a conduit for the transfer of assets to a stockholder. As soon as it had served that purpose, it "immediately was put to death," without ever conducting any business. Obviously, even apart from any tax motive, the entire transaction lay outside the plain intent of the reorganization provisions, and the Court so held.

The situation which confronts us in this case is vastly different. Here, the petitioners organized a new company to conduct a business. They brought about a transfer of the operating assets from the old

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

 * * * * * * *

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22))—

(1) The term "reorganization" means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred * * *

company to the new company. This they did with the intention that the new company carry on the business with those assets. For aught that any of the interested persons could foretell at that time, the new company would continue to conduct that business indefinitely, albeit the petitioners hoped that the business could eventually be sold for a fair price. The new company did in fact continue to conduct the business, without interruption, for a period of at least three years. Certainly, this transfer of assets from the old to the new company was for the very purpose of conducting a corporate business. That is what was done. It was no sham. Neither the transferor nor the transferee was ephemeral. Neither was a mere device or conduit for the conveyance of assets to a stockholder.

The petitioners argue, however, that there was no business advantage whatsoever to the old company to be derived from transferring the assets to a new company. This may be true, if it be said that it is of no advantage to a corporation to be put to death. But surely the fact that an old company is dissolved as a part of a plan of reorganization does not prevent the reorganization from being within the statute. *Survaunt* v. *Commissioner*, 162 Fed. (2d) 753; *Love* v. *Commissioner*, 113 Fed. (2d) 236; *Fisher* v. *Commissioner*, 108 Fed. (2d) 707; *Commissioner* v. *Whitaker*, 101 Fed. (2d) 640; *Helvering* v. *Schoellkopf*, 100 Fed. (2d) 415. This is recognized in the Circuit Court's opinion in this case. More frequently than not, plans of reorganization involving mergers, consolidations, or transfers of property from one corporation to another in exchange for stock contemplate the liquidation and dissolution of one or more corporations, parties to the reorganization.

Besides, we think the petitioners misconceive the law in arguing that the new company was organized solely for the convenience of the stockholders, and, hence, there was no advantage to either corporation and therefore no statutory reorganization. In almost every instance, corporations are organized for the convenience of the stockholders in conducting business. Such is the purpose of their existence. To say that a corporation, as such, can have motives and purposes apart from its stockholders, the collective group of individuals who own it, is to indulge in metaphysical reasoning which has no proper place in such practical matters as taxation. And to say that what is advantageous to the stockholders collectively in the conduct of the enterprise is of no advantage to the corporation, is utterly unrealistic. In the *Survaunt* case, *supra*, the District Court observed that it would be "difficult to conceive the reorganization of a corporation in which the stockholders did not have some 'personal reason' for effecting a change in the corporate affairs."

It is of no moment that the old John D. Lewis Co., as the petitioners

contend, might have continued to conduct the chemical manufacturing business without the necessity of organizing a new company to do so. The reorganization provisions of the statute were designed to permit of some flexibility, without present tax incidence, in changing the mode of conducting corporate business. Their purpose was to relieve from tax cases in which persons engaged in corporate enterprises might wish to consolidate or divide, or to add to or subtract from their holdings. See *Helvering* v. *Gregory*, 69 Fed. (2d) 809. Were absolute necessity the *sine qua non* of reorganizations, the statutory provisions would be little more than a dead letter; in place of the intended flexibility, there would be only rigidity. When, therefore, the Treasury regulations (Regulations 103, section 19.112 (g)–1) which the Circuit Court cited in its opinion refer to such readjustments of corporate structures as are required by "business exigencies" and are "an ordinary and necessary incident of the conduct of the enterprise," we think they must be taken to mean readjustments which are prompted by ordinary business prudence—readjustments, for example, which are helpful, useful, advantageous, or appropriate in the light of corporate business experience.

After July 1941 the old company had far more liquid assets than were needed for the conduct of the manufacturing business. In such circumstances, we think reasonable business men might well conclude, as did the petitioners, who were both stockholders and directors of the company, that a contraction was in order and that it would be wise to remove the unneeded capital from the risk of the business. The organization of a new company to carry on the business, with a reduced capitalization, seems to us an entirely logical and ordinary solution of the problem, in no sense "egregious to the prosecution" of the business. Doubtless there were other possible solutions. This, however, was the one chosen by the persons interested in the enterprise, after advice of counsel.

We have no doubt that the petitioners' desire to take a substantial part of their investment out of the business in such a way as to incur the least amount of tax largely influenced the choice of the particular plan which was adopted and carried out. Obviously, they thought that the result of the course determined upon would be that they would have to pay only a capital gains tax, and that they would avoid dividend tax or the tax incident to a partial liquidation. Does this mean, then, as the petitioners argue, that there was no business purpose in what was done—no business purpose in organizing the new company to carry on the business? We think it clearly does not. Certainly the *Gregory* case did not turn upon the *motive* of the stockholder. The Supreme Court said that "the question for determination is whether

what was done, *apart from the tax motive*, was the thing which the statute intended." (Italics supplied.)

It seems to us this fundamental test is reiterated in the Supreme Court's latest expression on the subject of reorganizations, *Bazley* v. *Commissioner*, 331 U. S. 737. There the Supreme Court expressed no approval of the distinction which the lower courts (the Tax Court and the Third Circuit Court of Appeals) had attempted to draw between stockholder business purposes and corporate business purposes. In substance, it said that the lower courts had reached the right result, "whatever may have been their choice of phrasing." The only mention of "business purpose" in the entire opinion is in the résumé of the Tax Court's findings. In the light of the *Bazley* opinion and in that of *Gregory*, the important inquiry is, not so much as to the motives and purposes of the stockholders or the corporation, but as to the effect of what was done. Was the thing done the kind of transaction with which section 112 (g) "in its purpose and particulars, concerns itself"? Here, we are of the opinion that the transfer of operating assets from the old company to the new, so that the new company might carry on the business, was that kind of transaction.

We do not believe that the statement in the Circuit Court's opinion with reference to "the avoidance of tax consequences" and "shareholder business purposes" is sufficient support for the petitioners' argument that their motive vitiates the reorganization. We are unwilling to attribute to that court any intent to say that the motive of stockholders is controlling, when the Supreme Court has said in *Gregory*, and in effect repeated in *Bazley*, that the motive is immaterial.

We know of no case involving facts substantially similar to those here present, with continued conduct of an existing business enterprise by the transferee corporation, using the assets of the old corporation, and with a continuity of interests in the same persons, in which it has been held that no business purpose existed and no reorganization occurred. In *Electrical Securities Corporation* v. *Commissioner*, 92 Fed. (2d) 593, cited by the Circuit Court herein, the transferor corporation was the device, or conduit, for the transfer of assets. It was not organized to conduct business, and it had no business which could be reorganized or carried on by the transferee corporation. As soon as it had served its short-lived purpose, it was put to death, just as the transferee corporation in *Gregory* had been. *George D. Graham*, 37 B. T. A. 623, upon which petitioners rely, and *Standard Realization Co.*, 10 T. C. 708, decided since the briefs were filed herein, are quite different from this case. In neither of those cases was the new corporation organized to carry on the business of the old. It did not carry on business with the transferred assets, but liquidated and disposed of them.

Section 112 (g), so far as it deals with the reorganization of corporate business, is one thing; section 112 (c) (2),[2] dealing with distributions made to stockholders in connection with a reorganization, is another. The latter section, too, has its own underlying purposes and history, which should not be confused with those of 112 (g). The adoption of 112 (c) (2) was brought about because corporate reorganizations were sometimes availed of to accomplish, or at least sometimes had the effect of accomplishing, a distribution of corporate earnings and profits to the stockholders without the incidence of dividend taxation. 3 Mertens, Law of Federal Income Taxation, sec. 20.108, p. 310.

Section 112 (c) (2) of course presupposes a corporate reorganization within the meaning of 112 (g). If a purpose on the part of stockholders to save dividend taxes were sufficient, in and of itself, to negative a reorganization under 112 (g), not only would 112 (c) (2) be deprived of much of its force, but the scope of 112 (g) would be unduly restricted. Particularly in the type of reorganizations involving intercorporate transfers of property and continued conduct of the business by a new corporate entity, as distinguished from cases involving a mere recapitalization of a single corporation, this is but another indication that a personal motive of the stockholders should not be the determining factor. Ordinarily, recapitalizations entail no immediate taxable transactions on the part of the corporation; intercorporate transfers of property do. They give rise to such problems as present recognition of gain or loss to the transferor corporation and basis for gain or loss or depreciation to the transferee corporation. The latter type of reorganization may well be an appropriate occasion for postponement of tax so far as the corporations are concerned. At the same time, if pursuant to the plan of reorganization what amounts to a dividend finds its way into the hands of a stockholder in the form of "boot," 112 (c) (2) fulfills its proper office of imposing the dividend tax on him.

On the record before us, we think it not open to serious question that

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

* * * * * * *

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

a genuine reorganization of a corporate business was accomplished by the transactions which took place in December 1941, with a continuity of business enterprise and a continuity of interests in the same persons under a modified corporate structure. What was done was undertaken for reasons germane to the continuance of the venture at hand. More capital was invested than was needed in the conduct of the business. The petitioners wanted to take out the unneeded part from the risk of the business. They were able to accomplish their purposes by doing what they did. But the transaction, viewed as a whole, was no mere vehicle for the conveyance of corporate earnings to stockholders. Only a part of what the petitioners received represented accumulated earnings and profits of the old company. It seems incontrovertible that the entire transaction had a very direct relation to the corporate business.

Upon a careful consideration of all the evidence taken at the original hearing and at the rehearing pursuant to mandate, we have found as a fact that a business purpose attended the transaction. That, as we understand the mandate, is sufficient to dispose of the case in accordance with our original determination and *Commissioner* v. *Bedford's Estate*, 325 U. S. 283. However, because of the importance of the question presented and the very exhaustive consideration given to the entire problem in the Circuit Court's opinion, we have thought it well to set out our views at some length.

Reviewed by the Court.

*Decision will be entered for the respondent.*

MURDOCK, *J.*, dissents.