INGLE COAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10794. Promulgated June 28, 1948.

*John E. McClure, Esq.*, and *Edward L. Updike, Esq.*, for the petitioner.

*Lester M. Ponder, Esq.*, for the respondent.

**OPINION.**

LEECH, *Judge*: The petitioner deducted 5 cents a ton as royalties paid to its stockholders in the taxable year. The respondent disallowed the deduction. The petitioner now contends the payments are deductible either as royalties, or as ordinary and necessary expenses under section 23 (a) (1) (A) of the Internal Revenue Code.

No authority is needed for the statement that the mere designation of the payments as royalties does not legally characterize them as such. Nor does the fact that the written obligation of the petitioner might, at least under some circumstances, have compelled their payment by the petitioner. *Interstate Transit Lines*, 44 B. T. A. 957; affd., 130 Fed. (2d) 136; affd., 319 U. S. 590. The question is whether, in fact, the payment was a deductible expense, as a royalty or otherwise, under the controlling statute. The answer to this question is, of course, purely factual.

In our opinion, the contested payments were neither royalties nor ordinary and necessary expenses, and therefore, they are not deductible.

The series of transactions between the two corporations and the stockholders of the first appearing in the findings of fact were obviously not at arm's length. The predecessor corporation, Ingle Coal Co., under its lease with the owners of the coal, had the right for 20 years to mine the coal under that lease at a royalty of 5 cents per ton. It was never intended to discontinue mining the coal from the lease in question. And it was intended that not the stockholders, but the petitioner corporation, should mine it. The distribution of that lease to the stockholders of the predecessor corporation and the assumption of the liabilities under that lease, *plus a contract to pay an additional 5-cent overriding "royalty" to the stockholders*, were wholly unnecessary to continue the right to mine coal under the lease. Although an effort was made to establish, as consideration for this action, the desire of several of the stockholders to receive some interest in lieu of their stock holdings which would more certainly secure their

income, we are not impressed either as to its factual accuracy or as to the legal conclusion therefrom, since, assuming that was consideration, it did not pass to the corporation. The expected benefit to the corporation in a reduction of its taxes resulting from the deduction of the overriding "royalty," although a reason for the agreement, is not, in the present picture, consideration therefor. In effect, petitioner received from the old corporation, not its shareholders, just what the old corporation had, namely, the right to continue mining coal under the lease. This is so regardless of the possibly enforceable obligation of the petitioner corporation, as between it and the shareholders, to pay the overriding "royalty." *Interstate Transit Lines*, *supra*. In short, under no aspect of the evidence, have we found or can we find that, the petitioner corporation intended to or did receive any actual consideration for agreeing to pay this additional five-cent "royalty." The series of transactions constituted integrated steps in a single plan and must be so considered for tax purposes, which resulted in an unnecessary "obligation" upon the part of petitioner to pay the so-called overriding "royalty." *Commissioner* v. *Ashland Oil & Refining Co.*, 99 Fed. (2d) 588; certiorari denied, 306 U. S. 661; *Diescher* v. *Commissioner*, 110 Fed. (2d) 90; certiorari denied, 310 U. S. 650; *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179; *Heller* v. *Commissioner*, 147 Fed. (2d) 376; certiorari denied, 325 U. S. 868; *Koppers Coal Co.*, 6 T. C. 1209. We think, under the circumstances, the payment of this additional 5 cents per ton as an overriding "royalty" was a distribution of corporate profits to the stockholders receiving the same and therefore was not a deductible expense, either as a "royalty" or otherwise. See also *Atlantic Monthly Co.*, 5 T. C. 1025.

The second issue, also factual, is whether petitioner is entitled to add the sum of $12,500 to its equity invested capital pursuant to section 718 (a) (6) of the Internal Revenue Code. That section, in substance, allows an amount equal to 25 per centum of "new capital" for such day. "New capital" is defined as so much of the money or property paid in for stock, or as paid in for surplus or as a contribution to capital, as was previously paid in during a taxable year beginning after December 31, 1940. There are certain limitations prescribed. The facts basing this issue show that the predecessor corporation, as of June 30, 1942, had an equity invested capital of $199,767.48 and an average borrowed capital of $272,460.79, representing notes held by four of its stockholders in the amount of $68,115.20 each. Petitioner, on acquiring the assets of the old corporation, assumed the liability of $272,460.79. As a part of petitioner's incorporation, the four stockholders agreed that petitioner should issue to each of them capital stock of the par value of $12,500 and, in consideration therefor, each of the four stockholders would reduce

his claim of $68,115.20 by the amount of $12,500, thus reducing the indebtedness assumed by petitioner to $222,460.79 and increasing equity invested capital to $250,000. By amended petition, it is now contended by petitioner that the $50,000 additional capital issue to such stockholders, as aforesaid, constitutes "new capital" entitling it to an additional 25 per cent in its equity invested capital under section 718 (a) (6) of the code. The respondent argues that, under the facts presented, the limitation prescribed in subparagraph (A) of that section becomes applicable and requires a denial of the 25 per cent addition to invested capital. Subparagraph (A) contains, *inter alia,* the following limitations:

(A) There shall not be included money or property paid in by a corporation in an exchange to which section 112 (b) (3), (4), (5) or (10), or so much of section 112 (c), (d), or (e) as refers to section 112 (b) (3), (4), (5), or (10) is applicable * * *.

At the culmination of the several integrated transactions detailed in the findings of fact, petitioner had acquired all the assets and had assumed all the liabilities of the predecessor company. In effect for present purposes, the old corporation dealt directly with the new corporation, petitioner. (See discussion on first point.) That petitioner may have picked up an additional liability in the process in the form of the overriding "royalty" does not change that conclusion. Except for the assumed liabilities, the consideration for this acquisition by petitioner was solely voting stock of petitioner. After the acquisition, the shareholders of the predecessor, transferor, were in control of petitioner. As was always planned and intended, petitioner continued to operate the business of the predecessor company. Obviously therefore, we think, there was a statutory reorganization under section 112 (g) (1) (C) and (D) of the Internal Revenue Code at least. *Helvering* v. *Alabama Asphaltic Limestone Co., supra; Survaunt* v. *Commissioner,* 162 Fed. (2d) 753; *Estate of John B. Lewis,* 10 T. C. 1080. The old corporation, a party to the reorganization, exchanged property in pursuance of a plan of reorganization solely for stock or securities in petitioner, a party to the reorganization, and the transaction is within the purview of section 112 (b) (4), which is one of the sections specifically mentioned in subparagraph (A), limiting the application of the 25 per cent addition to invested capital allowed by section 718 (a) (6). The effect of these several transactions was that whatever money or property petitioner acquired under the reorganization was "paid in" by the old corporation. The $50,000 additional stock issued resulted from a mere adjustment of the borrowed capital, and it is not "new capital" within the purview of section 718 (a) (6).[1]

---

[1] "The Report of the Senate Finance Committee, when section 718 (a) was amended by the Revenue Act of 1941, incorporating the provision relative to "new capital" states in part:

"* * * These limitations are intended, in general, to prevent a taxpayer from treating as new capital amounts resulting from mere adjustments in the existing capital, includ-

We conclude that petitioner's contention that it is entitled to add $12,500 to its invested capital under section 718 (a) (6) of the code is without merit.

*Decision will be entered for the respondent.*

---

ing borrowed capital, of the taxpayer, or of a controlled group of corporations." [S. R. 673, part I, 77th Cong., 1st sess., p. 38.]