## LEWIS et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4399.

United States Court of Appeals
First Circuit.

·Aug. 9, 1949.

James F. Armstrong, Providence, R. I. (Walter F. Gibbons, Providence, R. I., on brief), for petitioners.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and Lee A. Jackson, Sp. Assts. to the Atty. Gen., on brief), for respondent.

Before MAGRUDER, Chief Judge, and CLARK (by special assignment) and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

This case is before us for the second time on a petition to review a decision of

the Tax Court, reported in 1948, 10 T.C. 1080. Petitioners have sought, by invoking the doctrine of Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, to avoid the tax consequences of a transaction falling within the literal language of the statutory definition of a "reorganization". I.R.C. § 112(g) (1) (D), 26 U.S.C.A. § 112(g) (1) (D). On the first petition, we vacated the Tax Court's decision, reported in 1946, 6 T. C. 455, and remanded the case for further proceedings. 1 Cir., 1947, 160 F.2d 839. The factual background has been clarified on the remand.

John B. Lewis died in 1930, and John D. Lewis, Inc., a Rhode Island corporation (hereinafter called the old company), was organized in 1931 to take over the business which the decedent had operated. The common stock was issued to the trustees under decedent's will, and had a basis of $435,000 in their hands. Petitioners are the surviving trustees.

The old company was engaged in three different lines of business in 1941: the manufacture of synthetic resins, the manufacture of chemicals for the textile industry, and the distribution of chemicals. In July, 1941, the synthetic resin business and the chemical distributing business were sold for a total of approximately $325,000 in cash and marketable securities. At that time petitioners, who were directors of the old company, tried to sell the chemical manufacturing business too, but their efforts were unsuccessful. They decided to continue operating this business until they could dispose of it at a fair price, but they did not want to leave the old company's liquid assets at the risk of the chemical manufacturing business. Advice of counsel was sought as to how to distribute the liquid assets so as to incur a minimum tax. The decision was reached to transfer the operating assets of the chemical manufacturing business to a new corporation in exchange for its stock and to distribute this stock, together with the old company's liquid assets, in liquidation of the old company.

Steps were then taken to carry this decision into effect. On December 27, 1941, the directors of the old company voted to transfer to a corporation to be organized (hereinafter called the new company) all the assets of the old company, other than cash in excess of $90,000 and securities, in consideration of the issuance to the old company of the capital stock of the new company and the assumption by the latter of the old company's liabilities. This action of the directors was ratified by the shareholders on the same day. On December 29, 1941, the new company was incorporated under the laws of Rhode Island. At 11 A.M. on that day, the old company made the transfer of assets to the new company in exchange for its stock, and at 11:30 A.M. the directors of the old company voted to liquidate that company by distributing its remaining assets, including the stock of the new company, to the shareholders of the old company in cancellation of the old company's outstanding shares. Immediately thereafter the shareholders of the old company ratified this action, and it was carried out. The Tax Court found that the gain realized by petitioners, as trustees, on this exchange was $66,107.30, and this amount was not disputed by petitioners. The cash distributed to petitioners exceeded this sum, and the undistributed earnings or profits of the old company accumulated since 1931 also exceeded it.

The Tax Court found that "there was no interruption of [the chemical manufacturing] business and no change of location, policy, personnel, officers, or directors, but no salaries were paid to the officers. The new company continued to conduct the chemical manufacturing business until the latter part of 1944, when the Hercules Powder Co. purchased the bulk of its assets. The new company was liquidated and dissolved in 1945. The 1941 transfer of assets from the old company to the new company in exchange for the latter's stock was undertaken for reasons germane to the continuance of the corporate business. There was a business purpose in the transaction, and the plan which was adopted and carried out effected a genuine reorganization of corporate business, with a continuity of the enter-

prise and continuity of interests therein under a modified corporate structure."

On the fiduciary income tax return of the Estate of John B. Lewis for the year 1941, petitioners reported the gain on the exchange of the old company's shares as a long-term capital gain under I.R.C. §§ 115(c) and 117, 26 U.S.C.A. §§ 115(c), 117, realized upon the complete liquidation of the old company. The Commissioner determined a deficiency on the grounds that the liquidating distribution to petitioners by the old company was made pursuant to a plan of reorganization; that under § 112(c) (1) the gain was recognized in full since it was less than the value of the "boot", that is, the cash and securities (other than the stock of the new company) distributed; and that since the distribution had the effect of a dividend, it was taxable as such pursuant to § 112(c) (2). On the basis of the above findings, the Tax Court sustained the Commissioner. This decision of the Tax Court is now before us on review.

■ Sometimes the taxpayer seeks to establish that a statutory reorganization did not take place. E.g., Survaunt v. Commissioner, 8 Cir., 1947, 162 F.2d 753. Other times the Commissioner takes that position. E.g., Bazley v. Commissioner, 1947, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782, 173 A.L.R. 905. Our determination of the substantive question must not be controlled by whether in the particular case it is to the advantage of the government or of the taxpayer to make out that no statutory reorganization has been effected. See Lyon, Inc., v. Commissioner, 6 Cir., 1942, 127 F.2d 210, 213. "Rather, the effort should be to seek out the true intendment of the law, let the chips fall how they may in the particular litigation. Otherwise, to change the metaphor, interpretative chickens may come home to roost at a time when the barnyard wears quite a different aspect." Portland Oil Co. v. Commissioner, 1 Cir., 1940, 109 F.2d 479, 488.

■ In the present case, the integrated character of the steps in the plan pursuant to which the new company was created and the old company liquidated is not disputed. What took place is patently within a literal interpretation of the statutory definition of reorganization in § 112(g) (1) (D): "The term 'reorganization' means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred". Not only do "the facts answer the dictionary definitions of each term used in the statutory definition",[1] but we conclude that Congress meant to cover the situation in suit. As a leading practitioner has put it, "the essence of [a statutory reorganization] is a continuance of the proprietary interests in the continuing enterprise under modified corporate form, the transaction being deemed insufficiently closed economically to justify a tax at the time, except in so far as the stockholder gets something in addition to stock or securities in the reorganized company." Darrell, The Scope of Commissioner v. Bedford Estate, 24 Taxes 266, 272 (1946); see Gross v. Commissioner, 5 Cir., 1937, 88 F.2d 567, 568; Commissioner v. Gilmore's Estate, 3 Cir., 1942, 130 F.2d 791, 794; 3 Mertens, Federal Income Taxation § 20.50. This description fits the transaction here.

However, petitioners contend that George D. Graham v. Com'r, 1938, 37 B.T.A. 623,[2] governs and supports their position that a statutory reorganization did not take place. Even assuming the correctness of the Graham decision [3] for purposes of this case, we nevertheless consider it distinguishable. There the old corporation sold about 95% of its assets, and then transferred the remaining 5%, consisting of notes, mortgages, stock, etc., to a new corporation in exchange for the latter's stock. The old corporation then liquidated, distributing cash and securities and the new corporation's stock to its

[1] Helvering v. Gregory, 2 Cir., 1934, 69 F.2d 809, 810.

[2] This decision was followed in Dean Palmer v. Com'r, 1942, CCH BTA M Dec. 12,598-A, and Standard Realization Co. v. Com'r, 1948, 10 T.C. 708.

[3] But cf. 3 Mertens, op. cit. supra § 20.52 n. 26 at p. 206 (1942).

shareholders in return for their stock. The Commissioner disallowed the loss taken on the exchange by some of the shareholders in the old corporation, but the Board of Tax Appeals upheld their contention that no reorganization had taken place. According to the Board, the new corporation "was organized to liquidate the remaining assets of [the old corporation] and not to carry on any business enterprise"; the statute "was not intended to include such a transaction". 37 B.T.A. at page 630. Hence, the loss on the liquidation exchange was held to be allowable.

Thus, in the Graham case, the Board apparently concluded that a sine qua non of a statutory reorganization was absent: "Reorganization presupposes *continuance of business* under modified corporate forms." Cortland Specialty Co. v. Commissioner, 2 Cir., 1932, 60 F.2d 937, 940, (italics added).[4] But in the present case, petitioners' plan contemplated that the new company *would* carry on the chemical manufacturing business transferred to it, and this was done. Although petitioners' intention was to dispose of the chemical manufacturing business eventually, the fact that a going business was transferred and operated left the new company and petitioners, its shareholders, in a position where they stood to gain or lose from operations just as before the transfer; if business conditions warranted it, the business could have been continued indefinitely.

The liquidation of the old company does not change matters because a statutory reorganization may encompass as one of its incidents the liquidation of one of the corporations a party to the reorganization. Commissioner v. Whitaker, 1 Cir., 1938, 101 F.2d 640; Helvering v. Schoellkopf, 2 Cir., 1938, 100 F.2d 415; Fisher v. Commissioner, 6 Cir., 1939, 108 F.2d 707; Elise W. Hill's Estate v.

Com'r, 1948, 10 T.C. 1090. Nor does the statute make the amount of property transferred to the new corporation a decisive factor in determining whether a reorganization took place. Helvering v. Schoellkopf, supra. What is controlling is that in both the "popular and economic sense,"[5] and the intendment of the statute, considerations of "boot" aside,[6] gain or loss is not sufficiently crystallized for recognition by the mere transfer of a going business to another corporation for operation indefinitely; "the collective interests still remained in solution." Helvering v. Gregory, 2 Cir., 1934, 69 F.2d 809, 811. Hence, the transaction was within the statute.

Somewhat the same disposition may be made of petitioners' further argument. They maintain that the creation of the new company and the transfer to it of the chemical manufacturing business was motivated by the desire to free the liquid assets of the old company from the risk of the manufacturing business; that the old company could have continued to operate the manufacturing business, and that only the shareholders received any advantage from the new arrangement. In short, their position is that no statutory reorganization took place because the plan was motivated by a "shareholder purpose" and not the "corporate purpose" which they say is required by Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A. L.R. 1355. We reject this argument, as did the Tax Court.

At one time, in applying the so-called "business purpose" test of the Gregory case, the Tax Court did distinguish between "shareholder purpose" and "corporate purpose" in closely held corporations. Louis Wellhouse, Jr. v. Com'r, 1944, 3 T.C. 363; Alice H. Bazley v. Com'r, 1945, 4 T.C. 897; Adam A. Adams v. Com'r, 1945, 5 T.C. 351;[7] Marion Heady v. Com'r,

---

[4] See the regulations applicable in the present case. U.S. Treas. Reg. 103, § 19.112(g)-1 (1940), now U. S. Treas. Reg. 111, § 29.112(g)-1 (1944).

[5] Commissioner v. Capento Securities Corp., 1 Cir., 1944, 140 F.2d 382, 385.

[6] We must decide whether there was a reorganization irrespective of the presence of "boot" in the old company's liquidating distribution. Section 112(c) sets forth the tax consequences because of the "boot". Commissioner v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611. See infra.

[7] See also the circuit court opinions affirming the Tax Court in the Bazley

1945, 4 CCH TCM Dec. 14,702(m).[8] We think that the Tax Court has been correctly advised in unequivocally repudiating that distinction here. Cf. Richard H. Survaunt v. Com'r, 1945, 5 T.C. 665, affirmed 8 Cir., 1947, 162 F.2d 753; see Comment, 43 Ill. L.Rev. 512, 517 (1948). To seek to differentiate between "corporate purpose" and "shareholder purpose" is unrealistic and impractical, particularly with respect to closely held corporations. See Spear, "Corporate Business Purpose" in Reorganization, 3 Tax.L.Rev. 225, 242-43 (1948). The separate legal identity of these corporations should not obscure the fact that they are operated by their shareholders in a manner thought best calculated to serve the latter's interests. What is deemed best for the shareholders is deemed best for the corporation, and vice versa. We think it not insignificant that, in affirming the Bazley and Adams decisions, the Supreme Court gave no countenance to the distinction petitioners advocate. 1947, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782, 173 A. L.R. 905.

Whatever hesitation we may have had earlier, we are now convinced that emphasis upon "business purpose" as a requisite for statutory reorganization is futile on the facts here presented.[9] Cf. Lourie, The Business Purpose Doctrine, 25 Taxes 800, 805-06 (1947). This is not a situation as in the Gregory case where the new corporation was an evanescent creature, "brought into existence for no other purpose" than to serve as "a mere device * * * to transfer a parcel of corporate shares" to a shareholder, and immediately thereafter dissolved. There it was clear that "the transaction upon its face lies outside the plain intent of the statute." 293 U.S. at pages 469-470, 55 S.Ct. at page 268, 79 L.Ed. 596, 97 A.L.R. 1355. Here we regard it as equally clear that the transaction lies *inside* "the plain intent of the statute."

As we have stated, continuance of the business is a sine qua non of a statutory reorganization, but we need look no further than the Bazley case to see that in some contexts the mere fact that the business is continued does not mean that a statutory reorganization has taken place. See Spear, "Corporate Business Purpose" in Reorganization, 3 Tax L.Rev. 225 (1948). Hence, to denominate as "business purpose" the intention to have the new company continue the chemical manufacturing business would serve only to confuse. Whatever remaining utility there may be in the "business purpose" test, reliance upon such formula must not become a substitute for independent analysis. The controlling factor which we have concluded brings this case within the statute is that a basic element of the plan was the continuance of the chemical manufacturing business in the corporate shell of the new company, with the gain (were it not for the "boot") not having sufficiently crystallized for recognition, because the collective interests of the shareholders "still remained in solution." See Love v. Commissioner, 3 Cir., 1940, 113 F.2d 236; Heatley Green v. Com'r, 1942, 1 CCH TCM Dec. 12,922-E; 34 Va.L.Rev. 842 (1948).

If the shareholders of the old company had received only stock in the new company in cancellation of their old shares, under § 112(b) (3) of the Code no gain would have been recognized. Because of the "boot" also distributed, § 112(c) (1) provides that the gain is recognized here. Once it is decided against petitioners that a reorganization took place, petitioners have not argued in the alternative, either here or in the Tax Court, that the gain should nevertheless, under § 112(c) (2), be

---

and Adams cases. 3 Cir., 1946, 155 F. 2d 237; 3 Cir., 1946, 155 F.2d 246.

[8] Different reasoning was relied on for affirmance in 7 Cir., 1947, 162 F.2d 699. See Comment, 43 Ill.L.Rev. 512, 518 (1948); 34 Va.L.Rev. 842 (1948).

[9] We do not pause to consider whether the vitality of the "business purpose"

test has been undermined by the Bazley case. Compare Heady v. Commissioner, 7 Cir., 1947, 162 F.2d 699; Survaunt v. Commissioner, 8 Cir., 1947, 162 F. 2d 753, with Ballantine, Psychological Bases for Tax Liability, 27 Harv.Bus. Rev. 200, 207 (1949).

treated as a gain from the exchange of property (long-term capital gain), and not as a dividend. Compare Commissioner v. Estate of Bedford, 1945, 325 U.S. 283, 292, 65 S.Ct. 1157, 89 L.Ed. 1611; Love v. Commissioner, supra; Hill's Estate v. Com'r, supra; Heatley Green v. Com'r, supra; Hoffman, Impact of the Bedford Case on Reorganizations, in New York University Sixth Annual Institute on Federal Taxation 279 (1948), with Darrell, The Scope of Commissioner v. Bedford Estate, 24 Taxes 266, 272-73 (1946). We have not considered this possible alternative treatment of the transaction. See 9 Mertens, Federal Income Taxation § 51.31 (1943); Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.

The decision of the Tax Court is affirmed.