WALTER L. AND HELEN MORGAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63331. Filed October 13, 1959.

*Andrew B. Young, Esq.*, and *David P. Brown, Jr., Esq.*, for the petitioners.

*Edward L. Newberger, Esq.*, for the respondent.

36

**OPINION.**

BLACK, *Judge:* There is no dispute between the parties as to the amounts of gain which petitioners received from the liquidation of their shares in Wellington Corporation and in Fund Shares, Inc. The dispute is as to how such gains should be treated for taxation.

### *Issue 1. Wellington Corporation.*

The first issue presented is whether the distributions by the Corporation to petitioner in the amount of $214,150.99 were in liquidation of stock or had the effect of taxable dividends to the extent of petitioner's gain on the distribution. Petitioner contends that that portion of the payment in liquidation of his stock in the Corporation which is in excess of the cost basis of his stock is taxable as long-term capital gain under section 115(c).[8] Respondent contends that the

---

[8] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *

excess is taxable as ordinary income under section 112(c)(2).[9] We agree with petitioner. It is clear from the record that the distributions by the Corporation to petitioner were in complete liquidation of the Corporation. They were made pursuant to a corporate resolution authorizing liquidation and directing distribution of corporate assets. The Corporation was in fact dissolved within 1 year of the distributions and the liquidation served the useful business purpose of dissolving a corporation with no business operations. Thus, literal compliance with section 115(c) has been established.

The respondent, however, asserts that the liquidation was but part of a reorganization, that the distribution had the effect of a taxable dividend, and that it must be taxed as ordinary income under section 112(c)(2). That portion of the statute requires that a distribution be taxed as a dividend rather than as capital gain if it (1) is in pursuance of a plan of reorganization, (2) has the effect of a taxable dividend, and (3) is within the provisions of section 112(c)(1).[10] If we assume, *arguendo*, that the first two conditions of section 112(c)(2) are met, we must still determine whether the distribution is within the provisions of section 112(c)(1). The distributions which are within the provisions of section 112(c)(1) are those distributions made (1) partly in exchanges solely in kind as set forth in section 112(b)(1), (2), (3), or (5);[11] and (2) partly in money or other prop-

---

[9] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

* * * * * *

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

[10] (1) If an exchange would be within the provisions of subsection (b)(1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

[11] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(b) EXCHANGES SOLELY IN KIND.—

(1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

(2) STOCK FOR STOCK OF SAME CORPORATION.—No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in

erty. The record clearly shows that petitioner received a distribution of money or other property in the liquidation, but we are unable to find any exchange solely in kind as set forth in section 112(b) (1), (2), (3), or (5). Petitioner received nothing other than $214,150.99 in cash and bonds of the United States upon the liquidation.

Respondent, on brief, has cited many cases for the proposition that we should "look through form to substance," or see the "net effect" of the transaction here involved. *Survaunt* v. *Commissioner*, 162 F. 2d 753 (C.A. 8, 1947); *Lewis* v. *Commissioner*, 176 F. 2d 646 (C.A. 1, 1949); *Love* v. *Commissioner*, 113 F. 2d 235 (C.A. 3, 1940); *Estate of Elise W. Hill*, 10 T.C. 1090 (1948); *Standard Realization Co.*, 10 T.C. 708 (1948); *Becher* v. *Commissioner*, 221 F. 2d 252 (C.A. 2, 1955); and *Liddon* v. *Commissioner*, 230 F. 2d 304 (C.A. 6, 1956), certiorari denied 352 U.S. 824 (1956). We do not think the cases cited and relied upon by respondent are applicable to the facts in the instant case. It is to be noted that in each cited case there was an exchange of like property plus a distribution of money or other property. The cited cases stand for the proposition that we may and should look carefully to determine the true nature of disputed transactions; they do not stand for the proposition that we may or can manufacture missing links or imagine the existence of operative facts which will either invoke or revoke the application of any statute.

It is undoubtedly true that "[t]he underlying purpose of the exemptions in § 112 is to disregard corporate manipulations which do not substantially affect the shareholders' interest in the properties," as the Second Circuit stated in *Helvering* v. *Schoellkopf*, 100 F. 2d 415, 417, but it is equally true that Congress subjected to the provisions of section 112(c) (2) only those transactions encompassed within section 112(c) (1) and, by reference therein contained, possessing the nature of those transactions clearly and unambiguously set forth in section 112(b) (1), (2), (3), or (5). No matter how broadly or how piercingly we look, we can find no such transaction as is set forth in section 112(b) (1), (2), (3), or (5), whether with or without the "boot" to which section 112(c) addresses itself. "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out." *Gould* v. *Gould*, 245 U.S. 151.

---

another corporation a party to the reorganization.

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *

We are entitled to consider that the use of the word "exchanges" was confined to its ordinary sense, and cannot extend it by implication or enlarge it by construction so as to embrace matters not specifically pointed out in section 112(b)(1), (2), (3), or (5). *Edward H. Ellis & Sons* v. *United States*, 187 F. 2d 698, 700; *Mead Corporation* v. *Commissioner*, 116 F. 2d 187, 192.

Here there were no exchanges solely in kind as enumerated in section 112(b)(1), (2), (3), or (5). The shares were surrendered for cancellation in complete liquidation and the only property received was money or other property. Section 112(c)(2) applies only where (c)(1) applies, and (c)(1) applies only where an exchange would be within one of the provisions expressly mentioned in (c)(1). None of the provisions mentioned in (c)(1) has even remote application. Section 112(c)(1) has no application, and section 112(c)(2) has no application. The situation comes precisely within section 115(c). The amount of the distribution in excess of petitioner's cost basis is not subject to taxation as dividends but is taxable as capital gain. As to this issue we sustain petitioners.

### *Issue 2. Fund Shares, Inc.*

The second issue here presented is whether payments made in redemption of petitioners' stock in Fund Shares, Inc., were payments in liquidation of stock under section 115(c)[12] and taxable as capital gains, or "essentially equivalent to the distribution of a taxable dividend" under section 115(g)(1)[13] and taxable as ordinary income.

Petitioners contend that the amounts they received were "distributed in complete liquidation of a corporation" and have established that the board of directors of Shares adopted a resolution authorizing the complete liquidation of the corporation and the distribution to petitioners in cancellation of their stock, that Shares was in fact completely liquidated and dissolved within 1 year after the distribution, and that the liquidation served the business purpose of dissolving a corporation with no business operations. Respondent does not contend that there was any reorganization of Shares as he contends there was of the Wellington Corporation. He contends, however, that the net assets of Shares belonged to the Wellington Company and that the distributions were but taxable dividends made by the Wellington Company out of accumulated earnings and profits. To support this

---

[12] Relevant portions quoted *supra,* footnote 8.

[13] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—

(1) IN GENERAL.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

contention respondent relies upon two facts: First, that Shares and the Company agreed with an agent of the Internal Revenue Service to treat, for tax purposes, the income of Shares as income of the Company under section 45;[14] and second, that petitioners held 98.33 per cent of the stock of Shares and that petitioner husband held 100 per cent of the stock in the Company. The respondent concludes from these two facts that Shares was but a sham, that its net assets were the property of the Wellington Company, and that the distributions were in reality a disguised dividend paid out of the Company's accumulated earnings and profits.

In so concluding, the respondent has exceeded the authority granted by section 45 and has broadened the scope and ignored the purpose of that statutory enactment as set forth in Regulations 118, section 39.45–1(b)(1).[15] The very fact of the statutory enactment establishes that disregard of corporate entities is an extraordinary legal technique. Acts performed by the respondent under color of authority granted by section 45 which in fact exceed that authority will not be sustained. *General Industries Corporation*, 35 B.T.A. 615; *Chelsea Products, Inc.*, 16 T.C. 840, affd. 197 F. 2d 620 (C.A. 3); *T. V. D. Co.*, 27 T.C. 879. Section 45 authorizes the distribution, apportionment, or allocation of gross income deductions, credits, or allowances; it does not authorize the distribution, apportionment, or allocation of net assets, surplus, or accumulated earnings and profits either specifically or by necessary implication. The purpose of section 45 as set forth in Regulations 118, section 39.45–1(b), is the placing of "a controlled taxpayer on a tax parity with an uncontrolled taxpayer" within the scope of a determination of "the true net income from the property and business of a controlled taxpayer." Respondent's action herein neither accomplishes such a purpose nor falls within such scope. Respondent's contention that because the income of Shares was taxed as that of the Company, the net assets of Shares which represented accumulated net income be-

---

[14] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances, between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

[15] Sec. 39.45–1 *Determination of the taxable net income of a controlled taxpayer*—* * *

* * * * * * *

(b) *Scope and purpose.* (1) The purpose of section 45 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true net income from the property and business of a controlled taxpayer. The interests controlling a group of controlled taxpayers are assumed to have complete power to cause each controlled taxpayer so to conduct its affairs that its transactions and accounting records truly reflect the net income from the property and business of each of the controlled taxpayers. * * * The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer.

longed to the Wellington Company is a contention that cannot be sustained. We think respondent's contention is wholly without merit. We, therefore, sustain petitioners under issue 2.

Because there are other adjustments not contested,

*Decision will be entered under Rule 50.*