Dye, J.
The sole question is whether respondent corporation should be bound, as was its predecessor, by the arbitration clause contained in a collective bargaining agreement.
On this motion for a stay of arbitration, both the supporting and the opposing affidavits are in basic agreement on all the facts we consider relevant. From about 1946 on, the petitioner-appellant, Local 169 of the Amalgamated Clothing Workers of America, had engaged in consecutive collective bargaining agreements with the Infant and Juvenile Manufacturers Association, Inc., which had acted in behalf of its member employers. The contract now being controverted, dated June 1,1956, covered the period ending June 1,1960. In connection with this contract William Badwelsky and Moe Schwartz, then partners in the manufacture of children’s sportswear apparel and doing business under the name ‘‘ Williams Sportswear Co.”, ratified the bargaining agreement executed by the association, of which their firm was a member. They did this by executing a ‘ ‘ Certificate of Authorization and Ratification ”, by which they covenanted that during the life of the association’s agreement with the union they would not “ establish, open or engage or in any manner become interested, directly or indirectly, either as Employer, Owner, Partner, agent, stockholder, director or officer in any business whatsoever, involving the rhanufacture of garments unless in such business all the terms and conditions set forth in the above mentioned contract are duly performed and fully complied with ’ ’. Subsequently, on or about September 1, 1957, a date during the life of the collective agreement, Badwelsky and Schwartz dissolved their partnership. Thereafter Badwelsky continued the same business in the same location imder the *390 same name. Schwartz endeavored to find another business connection but, failing in this, he rejoined Radwelslty and on or about December 10,1957 they formed the respondent corporation with themselves as the officers thereof and as sole stockholders owning equal shares. The corporation continued the same business in the same location, and the record contains nothing to indicate that the employees were not also the same. The firm name was continued, with the addition of 1 ‘ Inc. ’ ’.
Early in 1959 the union learned that respondent was in default in its payments to the union’s insurance, pension, holiday and vacation fund, required by the bargaining agreement. Accordingly, the union proceeded to an audit of the corporation’s books and records for the year 1958-1959, as a consequence of which respondent was advised by letter that $5,719.72 was due and payment was demanded. The union states that the audit was performed pursuant to paragraph 24 of the bargaining agreement, with the full acquiescence of the corporation. The corporation admits that the audit took place but says that it was forced under threat of picketing.
The union asserts that negotiations were had, that respondent never denied its obligations under the collective bargaining agreement, and that payment was resisted only because the amount demanded was in dispute. Respondent’s version is different. It contends that the union had knowledge of the company’s changed status and that, indeed, it had taken “ a lump sum of many thousands of dollars ” in settlement of the partnership’s obligations, and had executed “ general releases ” in return.
In any event, on or about June 1, 1959, the union served a notice of arbitration pursuant to paragraph 21 (c) of the bargaining agreement.*
The first meeting was scheduled for June 2, 1959. The corporation requested and was granted postponement to June 23, 1959 and, again, to October 8, 1959. Shortly before that date *391 Radwelsky telephoned the union that respondent would not attend the scheduled arbitration, as it had been advised by its attorney that it had no valid agreement with the union. The union then served a 10-day notice of arbitration, pursuant to section 1458 of the Civil Practice Act, and scheduled a hearing to be held November 5, 1959. The corporation countered this move by obtaining an order to show cause why the arbitration should not be stayed. This motion was denied on the ground that the respondent, by its acts of “ adoption and ratification ”, became bound by the bargaining agreement; in effect this was to say that arbitration was enforcible. The respondent apparently accepted this ruling as it then appeared at the adjourned arbitration on March 2, 1960 and obtained a further adjournment to March 21, 1960. On that date it again appeared and obtained a further adjournment to March 28, 1960. Instead of going forward on that date the corporation obtained an order to show cause why the Special Term should not reconsider his prior ruling. He granted the motion only for the purpose of indicating that in his original decision he did not intend to go beyond what was tendered and that the order so made should not be taken as dispositive in advance of any issue that might be submitted to the arbitrator.
The reversal in the court below was on the general ground that the corporation was not a party to the collective agreement, and thus was not obliged to proceed to arbitration.
The question of “ participation ” has been argued vigorously. Section 1458 of the Civil Practice Act provides in part that one “ who has participated in the selection of arbitrators or in any of the proceedings had before them ” thereby loses his right to object to the confirmation of an award upon the ground, allowed by section 1462, that ‘ ‘ there was no valid submission or contract ’ ’. The union contends that a party who has lost his right to object to confirmation has equally lost his right, if any, to a stay of arbitration (Matter of A. R. La Mura, Inc. [Rochelle Arms Apts.], 281 App. Div. 683 [2d Dept., 1952]; Milton L. Ehrlich, Inc., v. Swiss Constr. Corp., 11 A D 2d 644 [1st Dept., 1960]). It then points to the requests for adjournment as a sufficient basis for finding such participation, analogizing through such authorities as Braman v. Braman (236 App. Div. *392 164) and Kelly v. Kelly (26 Misc 2d 1058, affd. without opinion 266 App. Div. 674). But we need not, and do not, decide that question here.
The issue of whether the union had knowledge of the company’s changed status could not have been resolved on these affidavits. The matter is in dispute, and, if this were the ordinary case, a jury trial would have been necessary for a decision.
It is a familiar principle that a corporation will be liable on a contract of its promoters only if adopted, either expressly or by acceptance of benefits referable to that contract (Morgan v. Bon Bon Co., 222 N. Y. 22). Thus a positive, authorized act is normally essential to corporate responsibility for preincorporation contracts.
If what the union says is true, and it had no knowledge of the company’s change of form, then the corporation—an employer — was enjoying a forbearance from collective bargaining. Obviously, the employees were working under the impression that their employer was bound by a collective bargaining agreement drawn in their behalf. Through ignorance which was no fault of their own, these employees and the representing union were naturally unconcerned with any need to negotiate a new contract. But, by law, they had a right to negotiate, and the employer was under a duty to engage in such negotiations (see 6 Corbin, Contracts, § 1420). By withholding information of the change from the union, the corporation was able to get union labor and other substantial benefits it might not have enjoyed except for the collective bargaining agreement which it now seeks to ignore.
All that has been said is for the usual situation; but, with respect to the matter now before us, it is not necessary that an adoption he found, and, therefore, the question of knowledge is unimportant. This is because there has been no change in the company, as a result of the incorporation, except the form itself.
A different concept of corporate liability may be invoked where the assets of a predecessor have been taken over completely in consideration of shares of stock, and no change has occurred in the underlying business. Several authorities support the position that, where the same men are doing’ business *393 in the new guise of the corporation, and there are no stockholders who did not participate in the earlier enterprise, the corporation will be held liable for its predecessor’s debts and contract obligations (see, e.g., Zander v. Larsen, 41 Wn. 2d. 503; Fena v. Peppers Fruit Co., 185 Minn. 137; Kulka v. Nemirovsky, 321 Pa. 234).
This corporation was, as the Special Term put it, “ an alter ego of the promoters ”. The Appellate Division reversed, on the law and the facts, because it felt that the creation of the new entity insulated the corporation from obligations arising out of its promoters ’ contracts. But, under the most favorable reading of its own affidavits, respondent is liable as the “ alter ego ” of persons bound by the collective bargaining agreement. This being so, no trial was, or will be, necessary.
Whether a release of the partnership’s future obligations under the collective bargaining agreement was in fact executed by the union is a question for the arbitrator.
Accordingly, the order of the Appellate Division should be reversed, and that of Special Term reinstated, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Fuld, Froessel, Van Voorhis, Burke and Foster concur.
Order reversed, etc.

 This danse is as follows: “ Should any complaint, grievance, demand or dispute arise hereunder out of or in connection with or in relation 'to this agreement or the interpretation, performance or breach thereof * * * then the matter shall be submitted for decision and final construction to the arbitrator under this agreement".