### WOODLAND NURSING HOME CORPORATION, Plaintiff,

v.

### Casper W. WEINBERGER, Individually and as Secretary of Health, Education and Welfare, and the Travelers Insurance Company, Defendants and Third-Party Plaintiffs,

v.

### WOODLAND NURSING HOME ASSOCIATES d/b/a Woodland Nursing Home et al., Third-Party Defendants.

### No. 74 Civ. 3483.

United States District Court, S. D. New York.

March 24, 1976.

McLaughlin & Stern, Ballen & Miller, New York City, for plaintiff and third-party defendants, by Stephen S. Bernstein, New York City, of counsel.

Thomas J. Cahill, U. S. Atty., S.D. N.Y., New York City, for defendants and third-party plaintiffs, by Charles Franklin Richter, Asst. U. S. Atty., Borge Varmer, Regional Atty., Sidney A. Sayovitz, Asst. Regional Atty., Dept. of HEW, New York City, of counsel.

OPINION

KEVIN THOMAS DUFFY, District Judge.

Woodland Nursing Home Corporation, plaintiff in this action, moves for summary judgment in its suit to recover monies allegedly due under the Medicare program. For the reasons hereinafter stated, the motion is denied.

Located in New Rochelle, New York, Woodland Nursing Home ("Woodland") has been a participating provider of medicare services since 1967, 42 U.S.C. § 1395 et seq. As is customarily the case, administrative oversight of Woodland's performance has been delegated by the Department of HEW to a "fiscal intermediary" designated by the nursing home, in this instance The Travelers Insurance Company, 42 U.S.C. § 1395u. As the conduit through which all federal funds to Woodland are channelled, Travelers is charged with the responsibility of annually determining the amount of payments owed to the nursing home. Following the standard procedure, Travelers' practice has been to pay on an ongoing basis the bills submitted to it by Woodland. Then, at the close of each year, after having evaluated a cost report prepared by the nursing home, 20 C.F.R. § 405.405(b), Travelers notifies Woodland of any necessary adjustments due to under or overpayments during the year.

The genesis of the present controversy can be traced to the submission of Woodland's first annual report in June 1968. Calculating its costs upon the Department Method of accounting—one of the two allowable methods under 20 C.F.R. 405.452(a)—Woodland claimed that it was entitled to $16.54 per day more for medicare patients than for non-medicare patients. This contention was rejected by Travelers on the ground that there had been no showing by Woodland that the disparity in charges accurately and reasonably reflected a difference in actual costs. Woodland, in turn, denied the need for such a showing.

The dispute continued as the years passed until May 24, 1973 when Travelers informed Woodland by letter that the accrued overpayments for 1968 and 1969 had reached a total of $250,179.05 and that, if this sum were not promptly repaid, all payments due Woodland for current and future medicare patients would be withheld against the money owed the medicare program. Despite this warning the money was not forthcoming and Travelers responded as it had warned. Plaintiff now claims that it has in this manner been unlawfully deprived of approximately $66,000.

Predictably, Woodland objected to the suspension of its payments and its letter of protest, sent to HEW on June 13, 1973, was forwarded to Travelers with instructions that it be treated as a request for a hearing.[1] Plaintiff's principal complaint was, and remains, that in offsetting funds due for 1973 expenditures against a debt allegedly arising in 1968 and 1969, defendants overlooked the fact that there had been a change in ownership of the nursing home during the intervening years. Originally operated by the Woodland Nursing Home Associates, a partnership, all interest in the nursing home was assigned in 1970 to the Woodland Nursing Home Corporation, created soon after state law was amended to allow for such incorporation. Defendants, in reply, point out that the outstanding stock of the corporation is divided equally between Irving Sendar and Martin Marmon, the very same persons who formerly comprised the partnership.

Secondarily, plaintiff asserts that the applicable HEW regulations give participating providers the absolute right to choose between either of the two accounting methods listed,[2] and that "no regulation of the defendants requires that the relationship between cost and charges be reasonable, nor are any standards of reasonableness prescribed, defined or provided for by any regulation."

Both of these contentions were rejected by the hearing panel convened by

---

1. In 1973, plaintiff commenced an action in this court seeking a preliminary injunction halting the described set-off. Judge Wyatt denied the motion since Woodland was about to be afforded an administrative hearing. The complaint was thereafter voluntarily withdrawn.

2. The two methods of apportionment set forth in 20 C.F.R. § 405.452(a) are the Departmental Method and the Combination Method.

Travelers on June 8, 1974 and consisting of two employees of the insurance company and one member designated by the nursing home. In a decision rendered on August 15, 1974, the panel concluded that Woodland had failed to fulfill adequately its obligation to justify the cost differential between medicare and non-medicare patients reflected in its annual reports. The panel indicated its concern that some of these charges had been "grossed up." In addition, the panel adopted and incorporated the opinion of the Social Security Administration that the "change in legal form from a partnership to a corporation is but a legal device of no practical consequences in operational fact and that by incorporating the partners sought to be enabled to escape the liability of the Medicare program for the overpayment made to them during the partnership type of business."

■ Plaintiff's first challenge is to the composition of the hearing panel. Although conceding that none of the members had any prior involvement with the decision of Travelers to offset future payments against Woodland's past debt, the corporation nevertheless argues that it is entitled to have its case heard by individuals with no connection whatsoever with the insurance company. The contention is frivolous. Due process of course requires a hearing before an impartial decision maker. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). It does not, however, prohibit a single agency from combining investigative and adjudicative functions, one group or individual passing upon facts developed by others within in the same organization. *Lopez v. Henry Phipps Plaza South, Inc.*, 498 F.2d 937 (2d Cir. 1974). Fundamental fairness is satisfied so long as the decision maker, as here, has not "participated in making the determination under review," *Goldberg v. Kelly, supra*, 397 U.S. at 271, 90 S.Ct. at 1022, 25 L.Ed.2d at 301.

■ There is greater merit, however, to plaintiff's objection that it was denied access to materials given to the panel members by the defendants prior to the hearing and which arguably formed a part of the foundation for the ultimate decision. It appears from the record that the action of the panel reflected a desire to avoid undue delay. While I might be sympathetic to their concern, as the defendants now concede, the conduct of the panel in this regard constituted an error of judgment. It is not necessary at this time for the court to delineate precisely the parameters of discovery available in such a hearing since the defendants agree that the contents of the file here at issue should have been disclosed to counsel for the corporation and the partnership.

It would thus seem that the obvious course would be to remand for a new hearing as the plaintiff initially requested in its motion papers. Plaintiff, however, now opposes what previously it proposed. Instead, it argues that the court should seize this opportunity to resolve the controversy between the parties by deciding the only remaining questions, characterized by plaintiff as involving solely points of law.

■ Plaintiff's assertion that there are no contested issues of fact is faultily premised upon two misconceived notions of law. It is apparent to this Court that the hearing panel was correct in its conclusion that Woodland was entitled to reimbursement only for the "reasonable costs" of its medicare services. While it is true that 20 C.F.R. § 405.404(a) states that either of the two approved methods of apportionment "may be used at the option of the provider," customary rules of statutory construction require that this section be read in conjunction with the earlier, introductory provision in § 405.401(a):

Under the health insurance program for the aged and disabled, the amount paid to any provider of services—i. e., hospital, skilled nursing facility, or home health agency—for the covered services is required by [42 U.S.C. §§ 1395f(b) and 1395*l*(a)(2)] *to be the reasonable cost* of such services subject

to provisions of §§ 405.455 and 405.460. [Emphasis added.]

Similarly, 20 C.F.R. § 405.460 begins with the admonition that "[i]n the determination of the allowability of provider costs estimated to be in excess of those necessary in the efficient delivery of needed health services are excluded."

The Departmental Method of accounting employed by the plaintiff, is based upon the assumption that the ratio of medicare charges to non-medicare charges will provide an accurate index for apportioning the total costs of the nursing home between medicare and non-medicare services, 20 C.F.R. § 405.452. Thus, if charges are inflated, reported costs will be distorted. Travelers correctly exercised its authority and responsibility by requiring Woodland to justify the disparity in charges alluded to earlier. On remand, the hearing panel should assess once again the cogency and persuasiveness of plaintiff's explanation.

The second material factual dispute concerns the motivation of the partnership in transferring to a corporation owned by the same individuals its interest in the nursing home. Plaintiff correctly states the general proposition that the corporate veil will not lightly be pierced, *Eskimo Pie Corp. v. Whitelawn Dairies*, 266 F.Supp. 79 (S.D.N.Y.1967). It is equally axiomatic, however, that the formality of incorporation with its attendant limitation of liability will not be honored if it is used as a device "to defeat public convenience, justify wrong, protect fraud or defend crime," 1 Fletcher, Corporations, § 41 (1974 Revised Vol.) at p. 166. Plaintiff strenuously insists that it filed its incorporation papers as soon as New York State law allowed it to do so. It emphasizes that HEW issued a new certification to the corporation as a medicare provider in 1970 without a murmur of discontent. Defendants, on the other hand, argue with matching vigor that plaintiff's incorporation was merely meant to avoid repayment to the United States of the debt accrued by the partnership. This con-

flict is pivotal and must be resolved in the first instance by the hearing panel below. In any event, it is plainly inappropriate for disposition on a summary judgment motion. *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975).

Accordingly, the motion is denied and the cause remanded for an administrative hearing in accordance with the principles set forth above.

SO ORDERED.