**WOODLAND NURSING HOME CORPORATION, Plaintiff,**

v.

**Patricia R. HARRIS, individually and as Secretary of Health, Education and Welfare, and The Travelers Insurance Company, Defendants and Third-Party Plaintiffs,**

v.

**WOODLAND NURSING HOME ASSOCIATES d/b/a Woodland Nursing Home, Irving Sendar and Martin Marmon, Third-Party Defendants.**

No. 74 Civ. 3483 (KTD).

United States District Court, S. D. New York.

April 13, 1981.

Litman, Friedman, Kaufman & Asche and McLaughlin, Stern, Ballen & Miller, New York City, for plaintiff; Richard M. Asche, Lewis R. Friedman, Stephen S. Bernstein, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for defendants and third-party plaintiffs; Susan M. Campbell, Asst. U. S. Atty., Frank V. Smith, III, Regional Atty., Region II, Julia Reed, Asst. Regional Atty., Office of the Gen. Counsel, Dept. of Health and Human Services, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is a renewal motion for summary judgment brought by the plaintiff Woodland Nursing Home Corporation on its claim to recover payments allegedly due under the Medicare program. The defendants in turn move for summary judgment on their counterclaim to collect from the plaintiff certain overpayments. For the following reasons, plaintiff's motion is denied and defendants' motion is granted.

A brief summary of the protracted history of this case provides the focus for the issues raised by these motions. Woodland Nursing Home ["Woodland"] is a skilled nursing facility which has provided services under the Medicare program, 42 U.S.C. § 1395 et seq., since 1967. Woodland exercised its option under the Medicare program to have a fiscal intermediary, in this case defendant Travelers Insurance Company ["Travelers"], perform the daily administration of the program. Travelers thus had the responsibility to determine the amount of payments owed to Woodland for the reasonable cost of Medicare services performed by Woodland. 42 U.S.C. §§ 1395f(b), 1395x(v). Under standard procedure, 20 C.F.R. § 405.405(b) (1970), Travelers makes interim payments to Woodland based on bills submitted by Woodland. At the end of each year, these payments are subject to adjustment upon the determination by Travelers of the reasonable costs of the services performed. This determination is based upon an annual cost report submitted by the nursing home.

This case arose from Woodland's submission of its annual cost report for the year 1967. Woodland claimed that it was entitled to $16.54 per day more for medicare patient services than for non-medicare patient services based upon one of two methods of accounting permitted by the applicable regulations. Travelers rejected Woodland's claim on the ground that there was no showing that the charges imposed by Woodland bore a reasonable relationship to Woodland's actual costs.

This dispute continued until May 24, 1973, when Travelers informed Woodland that Woodland would have to repay $250,179.05 it had received in overpayments or else all payments due for current and future Medicare patients would be withheld and offset against the money owed the Medicare program. The money was never re-paid, and on June 11, 1975, Travelers ceased payments to Woodland and commenced applying payments against the existing overpayment.

On January 8, 1974, an administrative hearing was held to determine whether Woodland was entitled to funds withheld by Travelers and whether an overpayment had been made. Plaintiff's principal contention was then, and is now, that in offsetting funds due for 1973 expenditures against a debt allegedly arising in 1968 and 1969, defendants overlooked a change in ownership of the nursing home that had occurred during the intervening years. In 1970, all interest in the nursing home was assigned from Woodland Nursing Home Associates ["Woodland Associates"], a partnership, to the Woodland Nursing Home Corporation ["Woodland Corporation"]. The outstanding stock of Woodland Corporation is divided equally between Irving Sendar and Martin Marmon, the same persons who formerly comprised the partnership. The Secretary of Health and Human Services ["the Secretary"] (formerly the Secretary of Health, Education and Welfare) subsequently entered into a provider agreement with the corporation retaining the provider identification number used by the partnership. Three months after the transfer, Travelers further explained to Irving Sendar the nature of the overpayments against the nursing home.

In August, 1974, an administrative hearing panel concluded that Woodland had failed to justify the cost differential between Medicare and non-Medicare patients reflected in its annual reports, and that the corporation could be held liable for the overpayments made to its predecessor partnership. Plaintiff thereafter commenced the present action against the Secretary and Travelers to recover accrued payments previously withheld by Travelers. A third-party action against Woodland Associates was later instituted by defendant for recovery of the overpayment, less any amount received through set-off.

In November, 1975, plaintiff moved for summary judgment. I denied this motion and remanded the case for an administrative hearing on two issues: (1) the motivation underlying plaintiff's incorporation, and (2) the validity and reasonableness of Woodland Associates cost accounting method.

In October, 1978, Travelers conducted the mandated hearing. Four months later, the hearing panel determined that Woodland failed either to justify the reasonableness of its cost differentials or to explain why an overpayment had indeed occurred. The hearing panel concluded that plaintiff Woodland Corporation was liable for the overpayment.

Soon after appealing the administrative determination, the plaintiff moved for a preliminary injunction, or in the alternative, for summary judgment, and moved for leave to amend the complaint. The Secretary moved to dismiss the action for lack of subject matter jurisdiction. On October 19, 1979, D.C., 487 F.Supp. 9, I denied both parties' motions except for plaintiff's request to amend their complaint. I concluded that this court had subject matter jurisdiction and that the plaintiff's summary judgment motion would have to await the result of the administrative appeal which was pending at that time.

On December 7, 1979, a final administrative decision was rendered by the Secretary. Upon reviewing the hearing panel's findings, the Secretary concluded that Woodland had not justified the disparity in charges between Medicare and non-Medicare services, and that, as a result, Woodland was indebted to the Medicare program for overpayments. Also, despite the absence of a specific finding that the corporation was formed for a fraudulent purpose, the Secretary determined that the corporation is responsible for the Medicare debts of the partnership.

■ There is no doubt in this case that Woodland Nursing Home Associates received overpayments of Medicare funds in 1967 and 1968. The Secretary's determination that Woodland failed to justify the disparity in charges between Medicare and non-Medicare services is supported by the evidence. An examination of the record before me does not reveal any sound justification for the disparity. Moreover, plaintiff has not offered any reason to overturn this determination by the Secretary.

As a result, the major issue presented by the instant motions is whether Woodland Nursing Home Corporation is liable for the overpayments received by Woodland Nursing Home Associates. For the following reasons, I find that the corporation is liable.

Plaintiff makes essentially two arguments on its renewal motion for summary judgment. First, plaintiff asserts that the hearing panel found no evidence that the transfer of ownership of the nursing home to the corporation was done for any reason other than business purposes. Plaintiff argues that this finding means that plaintiff is not liable for the debts of Woodland Nursing Home Associates on a piercing of the corporate veil theory.

Second, plaintiff asserts that the Secretary cannot recover the partnership debt from the corporation without suing the partnership or the individual partners first. Absent the corporation assuming the partnership debt, it is argued, a corporation should not be liable for the debts of its predecessor partnership. Here, no such debt assumption took place. The successor corporation expressly assumed only $106,971.71 in accounts payable. Moreover, the Secretary did not insist on reserving the right to collect partnership debts from the corporation when they entered into the provider agreement with the newly formed corporation.

In remanding this case over four years ago, I stated that "the formality of incorporation with its attendant limitation of liability will not be honored if it is used as a device 'to defeat public convenience, justify wrong, protect fraud or defend crime.'" D.C., 411 F.Supp. 501, at 505 (*quoting* 1 Fletcher, *Corporations* § 41 (1974)). This statement did not exclusively require a finding that the change from corporation to partnership was fraudulent in order for there to be liability on the part of the corporation. Equity and, in particular, policy considerations under the Medicare statute may provide a basis for the same result.

■ Under New York law, which governs in this case, a corporation which is merely the "alter ego" of the promoter can

be liable for the contractual obligations of its promoters. In *Reif v. Williams Sportswear, Inc.,* 9 N.Y.2d 387, 214 N.Y.S.2d 395, 174 N.E.2d 492 (1961), the New York Court of Appeals held the defendant corporation liable on a collective bargaining agreement to which its predecessor partnership was a party. Plaintiff argues that *Reif* is distinguishable from the case at bar because the corporation in *Reif* continued to receive benefits under the predecessor partnership's contract whereas here the corporation entered into a new agreement for Medicare payments. This distinction, however, does not detract from the applicability of the rationale underlying the *Reif* decision. In *Reif,* the Court of Appeals reasoned that "[a] different concept of corporate liability may be invoked where the assets of a predecessor have been taken over completely in consideration of shares of stock, and no change has occurred in the underlying business. [W]here the same men are doing business in the new guise of the corporation, and there are no stockholders who did not participate in the earlier enterprise, the corporation will be held liable for its predecessor's debts and contract obligations." 9 N.Y.2d at 392–93, 214 N.Y.S.2d 395, 174 N.E.2d 492. Here, Woodland Associates incurred a debt from Medicare and thereafter changed into a corporation but continued to operate the same nursing home with the previous partners becoming the sole stockholders. Despite the absence of proof of a fraudulent intent, permitting the corporation to point to the corporate veil in order to avoid the partnership's liability would result in an injustice. The Woodland Nursing Home cannot be allowed to escape its debts to Medicare simply by changing its business form.

Moreover, to permit Woodland Corporation to avoid liability for Woodland Associate's debts would be contrary to an important policy underlying the Medicare program which is to insure that the government not be charged for more than the reasonable cost of services being rendered. *United States v. Normandy House Nursing Home, Inc.,* 428 F.Supp. 421, 425 (D.Mass. 1977).

■ The corporation's liability is not precluded by the defendants' failure to bring a claim first against the individual partners. In light of the nature of the Medicare payments extended to the nursing home, the Secretary is not required to exhaust other methods of recovery before attempting to set off the debt. Nor does the Secretary's failure to require the corporation to assume the partnership's debt at the time a new provider agreement was entered into in 1970 preclude the Secretary's recovery. The record shows that Travelers was not certain of the amount of the overpayment until 1973, long after the new provider agreement was entered into.

Accordingly, defendants' motion for summary judgment is granted against the plaintiff for the amount of overpayments to Woodland plus interest, less the amount which has been recouped to date from plaintiff. Plaintiff's motion for summary judgment is denied.

Settle judgment on five days' notice within twenty days from the date hereof.