SOL LESSINGER AND EDITH LESSINGER, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24103–81.     Filed November 20, 1985.

*Bruno Schachner*, for the petitioners.
*William Gross, Arnold Gould*, and *Robert L. Schneps* for the respondent.

CLAPP, *Judge*: Respondent determined deficiencies in petitioners' Federal income tax in the amounts of $114,147.30 and $1,427.50 for the taxable years 1977 and 1978, respectively.

After concessions, the issues remaining for decision are: (1) Whether petitioner Sol Lessinger should recognize gain of $251,014, in the taxable year 1977 pursuant to section 357(c);[1] and (2) whether petitioner Edith Lessinger is entitled to relief from liability for the 1977 deficiency under the provisions of section 6013(e).

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Sol and Edith Lessinger, husband and wife, resided at Suffern, New York, on the date the petition in this case was filed. Petitioners filed joint Federal income tax returns for the taxable years 1977 and 1978, the years before the Court.

For over 25 years prior to December 31, 1976, petitioner Sol Lessinger (hereinafter petitioner in the singular) was engaged in business as a sole proprietor using the trade name Universal Screw & Bolt Co. (hereinafter proprietorship). The proprietorship acted as a wholesale distributor of a variety of metal fasteners. Universal Screw & Bolt Co., Inc., a New York corporation (hereinafter Universal), was organized on January 1, 1962. Petitioner has been the sole shareholder of Universal since it was incorporated. Universal was engaged in a similar business as the proprietorship, that is, the wholesale distribution of a variety of metal fasteners. Petitioner was the president and chief executive officer of Universal.

The business operations of Universal and the proprietorship were conducted from the same location on Ninth Avenue, New York, New York. Prior to January 1, 1977, Universal and the proprietorship carried on separate business operations and maintained separate books and records. Both maintained their books and records and filed their Federal income tax returns using the accrual basis of accounting and the calendar year accounting period.

The proprietorship's working capital was provided in part by a factor which made loans secured by a pledge of the proprietorship's accounts receivable. In the latter part of 1976,

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

the factor refused to continue the existing arrangement. It notified petitioner, through S.Z. Swidler, petitioner's attorney and accountant, that it would continue the financing only for a corporation so that the factor could take advantage of the higher interest rate permitted on loans to corporations under the laws of the State of New York. Petitioner instructed Mr. Swidler to do whatever was necessary for the proprietorship to become a corporation so that he could continue operation. The details of the transfer were not explained to petitioner. Mr. Swidler instructed his associate, Nathan Kutner, a certified public accountant, and Max Fuchs, the bookkeeper of the proprietorship, as to the necessary arrangements for the transfer. It was determined that the businesses operated by the proprietorship and Universal should be consolidated as of January 1, 1977.

The unaudited balance sheet of the proprietorship as of December 31, 1976, disclosed the following:

ASSETS

| | | |
|---|---:|---:|
| Current assets: | | |
| Cash in bank and on hand | $3,915.80 | |
| Accounts receivable | 424,880.51 | |
| Marketable securities and mutual funds | 266,603.93 | |
| Merchandise inventory | 885,419.00 | |
| Total current assets | | $1,580,819.24 |
| Fixed assets: | | |
| Furniture and fixtures | 74,211.66 | |
| Equipment | 9,953.69 | |
| Automobiles and trucks | 51,915.87 | |
| Office machines | 13,648.30 | |
| Improvements | 33,328.75 | |
| Total | 183,058.27 | |
| Less accumulated depreciation | 77,432.48 | |
| Total fixed assets | | 105,625.79 |
| Other assets: | | |
| Investment - Israeli bonds | 1,330.00 | |
| Goodwill | 40,000.00 | |
| Programming - net | 1,070.00 | |
| Prepaid expenses | 3,300.03 | |
| Total other assets | | 45,700.03 |
| Total assets | | 1,732,145.06 |

LIABILITIES AND CAPITAL

Current liabilities:

| | | |
|---|---|---|
| Accounts payable - trade | $416,026.24 | |
| Notes payable - due within 1 year | 990,795.02 | |
| Due to broker | 329.15 | |
| Taxes payable | 6,735.55 | |
| Loans and exchanges | 5,022.91 | |
| Accrued expenses | 161,807.97 | |
| Total current liabilities | | $1,580,716.84 |
| Other liabilities: | | |
| Notes payable - due after 1 year | | 341,822.81 |
| Capital: | | |
| Sol Lessinger - Capital (Exhibit "B") | | (190,394.59) |
| Total liabilities and capital | | 1,732,145.06 |

*Schedule A-1*

| | Due within 1 year | Due after 1 year |
|---|---|---|
| Notes payable: | | |
| Chemical Bank | $202,500.00 | $337,786.47 |
| Trade | 464,288.62 | 4,036.34 |
| Auto loans | 8,727.51 | - - - |
| Insurance | 278.89 | - - - |
| Trefoil | 315,000.00 | - - - |
| Total notes payable | 990,795.02 | 341,822.81 |

On January 1, 1977, the proprietorship bank account was closed and all business activity formerly conducted by the proprietorship was carried on by Universal. On that date, the operating assets and related business liabilities of the proprietorship were transferred to the pre-existing corporation, Universal. The principal assets which were not transferred were mutual fund shares. The principal liability not transferred was the loan from Chemical Bank secured by the mutual fund shares.

No shares of stock or other securities were issued by Universal. No written agreements were prepared or executed between Universal and petitioner in connection with the consolidation.

Certain liabilities of the proprietorship were expressly assumed by Universal: (1) The indebtedness to the factor Trefoil, and (2) the trade notes payable in the amount of $802,075.09. These notes payable are of two types. First, the proprietorship had issued notes to creditors which were payable after January 1, 1977, at the bank of the proprietor-

ship. After January 1, 1977, and prior to the due date, each payee was notified to change the name of the maker of the note to Universal and the place of payment to Universal's bank. The physical change was accomplished either by an employee of Universal or an employee of the payee. Second, in or about the month of December 1976, it had already been decided that the proprietorship would discontinue its business and bank account. Notes given for debts incurred by the proprietorship during that period, but which were not to become due until after January 1, 1977, designated Universal as payor, and were made payable at Universal's bank.

The trade accounts payable were not discussed with the creditors. The creditors of the proprietorship were the same as those of the corporation. It was intended that Universal would pay these accounts and in fact it did so within 3 to 6 months after the consolidation. The accounts payable ledger of the sole proprietorship was used as the corporate record.

Five months after the consolidation on June 1, 1977, the following journal entries were made to reflect the consolidation:

| | | |
|---|---|---|
| Cash in bank | $3,715.80 | |
| Petty cash | 200.00 | |
| Accounts receivable - N.Y. | 363,359.22 | |
| Accounts receivable - Phila | 61,521.29 | |
| Furniture and fixtures | 74,211.66 | |
| Equipment | 9,953.69 | |
| Autos and trucks | 51,915.87 | |
| Office machines | 13,648.30 | |
| Improvements | 33,328.75 | |
| Goodwill | 40,000.00 | |
| Programming | 2,675.00 | |
| Prepaid - insurance | 2,057.09 | |
| Prepaid - interest | 1,242.94 | |
| Inventory | 885,419.00 | |
| Loan receivable - SL | 255,499.37 | |
| Accumulated depreciation— | | |
| | F. & F. | $26,149.70 |
| | Equipment | 4,159.82 |
| | Autos | 33,813.99 |
| | Office machines | 5,507.19 |
| | Improvements | 7,801.78 |
| Programming | | 1,605.00 |
| Loan and exchange | | 5,022.91 |
| Accounts payable - trade | | 416,026.24 |

| | |
|---|---:|
| Accounts payable - expenses | $27,479.09 |
| Notes payable - trade | 802,075.09 |
| Notes payable - equipment | 13,042.74 |
| Notes payable - Trefoil | 315,000.00 |
| Payroll taxes payable | 6,735.55 |
| Commissions payable | 6,376.12 |
| Accrued expenses | 127,952.76 |

The amount that the liabilities of the proprietorship exceeded the adjusted basis of the assets is represented by the notation "Loan receivable - SL" (SL represents petitioner) of $255,499.37. This amount was in turn posted in June 1977 on a general ledger sheet as a debit to petitioner's account. Petitioner did not execute a note for this amount nor did he pay or agree to pay any interest on this amount. A non-business debt of $3,500 owed by petitioner was paid by Universal at the time of the consolidation and was charged to petitioner's account. During January 1977, petitioner sold his mutual funds. The net proceeds of the sale were used to pay down the Chemical Bank Loan, and a balance of $62,209.35 was paid to Universal. This payment was credited on Universal's books to petitioner's account. After these entries were posted, petitioner's account showed a debit in the amount of $196,790. No part of this amount was paid to Universal through the end of 1982. Petitioner's account at the end of 1982 showed a balance of $237,044. In October 1981, petitioner executed a note for the balance in his account at the request of a creditor.

At the beginning of 1977, Universal had retained earnings of $29,638; at the end of 1977, $38,671. Petitioner's basis in the stock of Universal was $500 at all times material hereto.

Petitioners Sol and Edith were married in 1940. Although not legally separated or divorced, they have lived apart since 1971. Mrs. Lessinger was listed as an employee on Universal's payroll and received a salary from Universal which was reflected on Forms W-2 issued by Universal. Mrs. Lessinger did not perform any service for Universal and did not discuss any business with petitioner. Mrs. Lessinger was aware that the weekly checks she received for approximately $300 came from either the proprietorship or Universal and that the checks were net of payroll deductions.

The Commissioner determined in the notice of deficiency issued to petitioners, that petitioners had recognized gain in the amount of $251,014 under section 357(c). The amount of

$255,499 shown on Universal's books as the excess of the liabilities over the adjusted basis of the transferred assets was reduced by the Commissioner in the amount of $4,485 to reflect changes in the adjusted basis of certain of the assets. This adjustment is not disputed nor is the character of gain (89.78-percent ordinary income and 10.22 percent of capital gain), if any gain is recognized under section 357(c).

OPINION

Section 357(c)[2] is applicable to the subject transaction only if there is an exchange to which section 351[3] applies. Here, the question is whether section 351 applies to the transfer of the proprietorship's assets and liabilities to petitioner's wholly owned corporation, even though petitioner received no additional stock or securities from the corporation. Petitioners argue that section 351 by its own terms applies only to exchanges for stock or securities. Petitioners concede that the failure to issue stock may be disregarded in the case of a wholly owned corporation if the transaction could otherwise be a device to evade taxes, but here there was no such attempt because there is nonexistent economic gain. Petitioners argue that the best way to view the subject transaction, taking into account the value of petitioner's debt to the corporation, is as a contribution to capital of zero value. Respondent argues that the failure to issue stock should not preclude the application of section 351, inasmuch as the issuance of stock where property is transferred by a 100-percent shareholder is a meaningless gesture.

---

[2]SEC. 357. ASSUMPTION OF LIABILITY.

(c) LIABILITIES IN EXCESS OF BASIS.—

    (1) IN GENERAL.—In the case of an exchange—

        (A) to which section 351 applies, or

        (B) to which section 361 applies by reason of a plan of reorganization within the meaning of section 368(a)(1)(D),

if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

[3]SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.

The view that an exchange of stock is a meaningless gesture where the proportionate ownership of the transferor and transferee is identical has been adopted by this Court and others in the context of determining whether a liquidation and subsequent reincorporation of corporate assets is in actuality a reorganization. In *Commissioner v. Morgan*, 288 F.2d 676 (3d Cir. 1961), revg. 33 T.C. 30 (1959), the taxpayer was the sole shareholder of the transferor and the transferee corporations. The transferor was liquidated and the operating assets were conveyed to the transferee who performed identical services as the transferor. Cash and bonds were distributed from the transferor to the taxpayer who reported the distribution as a distribution in liquidation and treated the gain as long-term capital gain. The Commissioner determined that the distribution was taxable as dividend income under the pertinent reorganization provisions of the Internal Revenue Code of 1939. The Third Circuit agreed and found the stock exchange requirements of section 112(b)(3) and (c) (corresponding to section 354(a)(1) and section 356(a)(1)(B) of the Internal Revenue Code of 1954) had been satisfied. The court then stated:

If the transferor's assets had been transferred to a newly formed corporation in exchange for stock, there is no question that the boot would have been taxable as dividend income. That an existing corporation in which the taxpayer was the sole shareholder was used instead of a newly formed one cannot alter the true nature of the transaction. Here, the issuance of new stock would have been a meaningless gesture since the stock the taxpayer already held represented the total value of all the assets except for the boot. [288 F.2d at 680.]

This Court followed this reasoning in an analogous case, *James Armour, Inc. v. Commissioner*, 43 T.C. 295, 307 (1964), where two individuals were sole shareholders of the transferor corporation, Armour, Inc., and the transferee corporation, Excavating. The transferor corporation liquidated and its operating assets were conveyed to the transferee. The issue presented was whether a complete liquidation of Armour, Inc., had occurred or a reorganization under section 368(a)(1)(D). In answer to taxpayers' argument that the stock exchange requirements of section 354, section 355, or section 356 had not been met because no stock of the transferee was actually distributed to the transferor or the shareholders, this Court stated:

the petitioners already owned all the stock of Excavating and it was not necessary that further stock be issued in order that they might retain their same proprietary interest in the assets received by Excavating. The issuance of further stock would have been a meaningless gesture, and we cannot conclude that the statute requires such a vain act. We conclude, therefore, that there was in substance an exchange of stock of Armour, Inc., for stock of Excavating, which meets the requirements of sections 354 and 356 of the Code. * * * [43 T.C. at 307.]

The Court expressed the view that the holding in *Morgan*:

was not based upon the reasoning that in effect stock of the transferee corporation was issued to the transferor corporation in exchange for any assets transferred without consideration. Rather, we construe that case as holding that the exchange requirements are met if, when a series of transactions is completed, the stockholders of the old corporation retain their proprietary interest in the same going business, although in another corporate shell. * * * [43 T.C. at 308.]

This principle, that the actual distribution of stock would be a mere formality when ownership of the transferor and the transferee is identical, has been applied repeatedly. *Atlas Tool Co. v. Commissioner*, 70 T.C. 86, 97 (1978), affd. 614 F.2d 860, 865 (3d Cir. 1980); *American Mfg. Co. v. Commissioner*, 55 T.C. 204, 221 (1970); *South Texas Rice Warehouse Co. v. Commissioner*, 43 T.C. 540, 569 (1965), affd. on this issue sub nom. *Davant v. Commissioner*, 366 F.2d 874, 886–887 (5th Cir. 1966). See also *Rose v. United States*, 640 F.2d 1030, 1034 (9th Cir. 1981).

In a case involving a predecessor of section 351, *King v. United States*, 79 F.2d 453 (4th Cir. 1935), affg. 10 F. Supp. 206 (D. Md. 1935), the same reasoning was applied. In *King*, Emile Berliner who owned stock in both an American corporation and a British corporation organized Gramaphone & Securities Corp., a Virginia corporation, in July 1921 and transferred his shares in the British corporation to the new corporation in exchange for substantially all of the stock of the new corporation. Two additional shares were issued for cash. Within 30 days, he also transferred shares in the American corporation to the new corporation without additional stock issuance or other consideration. The delay in the transfer of the American shares was by accident, not design, because the certificate for the shares was not readily available. Gramaphone sold the American stock in 1927. The issue presented in the case was

what was the basis of the shares sold. The Service argued that the contributed stock was either a gift or an acquisition of property within the meaning of section 204(a)(8) of the Revenue Act of 1926, 44 Stat. (Part 2) 9, 15 (predecessor to section 351), and therefore the basis was that of the transferor. The taxpayer argued that the contributed stock was paid-in surplus and, therefore, would not come within any of the provisions of the Revenue Act calling for a carryover basis.

The District Court was of the opinion that the transfer fell within the provisions of section 204(a)(8), even though no additional stock was issued. The court stated:

Here we have in substance a one man corporation where the issuance of additional stock would be of little or no financial substance. It made no material difference to the stockholder whether additional shares of stock were issued or not as the value of all the stock held by him would remain substantially the same irrespective of the mere number of shares. * * * [10 F. Supp. at 209.]

The court believed that this was particularly the case where it was inferable that Berliner originally contemplated transferring both stocks to the corporation and that the stock issued to him by the new corporation was intended to be for both of the contributed stocks.

The Court of Appeals agreed with this inference and agreed with the reasoning of the trial court below that:

the issuance of additional stock in the transferee corporation to the man who already owned all of the stock would in no way have affected the value of the stock already held by him, while owned by him, and the conclusion is inescapable that the transaction must be treated in substance as the issuance of securities for property transferred. * * * [79 F.2d at 456.]

Both courts referred to the legislative history of the statute involved, as well as the enactment (subsequent to the taxable year involved in the case) of section 113(a)(8) of the Revenue Act of 1932, 47 Stat. 169, 200 (predecessor of section 362(a) of the 1954 Code), to support the view that Congress intended to impose a tax on the appreciated value of stock from March 1, 1913, to the date when sold. Under section 113(a)(8) of the Revenue Act of 1932 and section 362(a) of the 1954 Code, Congress explicitly provided that when there is a contribution to capital there is a carryover basis.

Contrary to this view that formal distribution of stock is not required is the case of *Abegg v. Commissioner*, 50 T.C. 145 (1968), affd. on other grounds 429 F.2d 1209 (2d Cir. 1970). The issue to be decided there was whether section 367,[4] as then enacted, applied so that gain would be recognized on a contribution of securities by a nonresident alien to his wholly owned foreign corporation. Section 367 was not applicable unless the contribution was considered a section 351 exchange. The taxpayer, Werner Abegg, was a Swiss citizen who had contributed various stocks to his wholly owned Panamanian corporation, Cresta. Two of the stocks had appreciated in value and one had depreciated in value. The net value of the three stocks was less than their aggregate bases. The Commissioner had determined that the transfer of stocks was in effect an exchange under section 351 and, accordingly, section 367 was applicable. Because no advance ruling was obtained on the transfer, the Commissioner determined that the gain on the two stocks should be recognized. Respondent relied on the cases of *King v. Commissioner, supra*, and *Morgan v. Commissioner, supra*, to support his position that the issuance of additional stock of Cresta was immaterial to the determination that section 351 was applicable.

This Court distinguished the two cases—*Morgan* because it involved a question of a reorganization, and *King* because it involved a question of basis. Unlike *King*, the transfer by Abegg of the securities could not be considered in any way as part of the original incorporation. This Court found that no exchange as provided by section 351 had taken place. Therefore, it was held that the securities transferred constituted a contribution to capital and that section 351 and, therefore, section 367 were inapplicable.

The Court of Appeals affirmed this result but on different grounds. The appellate court reasoned that contributions to capital by U.S. citizens or residents to foreign corporations for

---

[4]Sec. 367 as in effect for taxable year 1958 provided as follows:

In determining the extent to which gain shall be recognized in the case of any of the exchanges described in section 332, 351, 354, 355, 356, or 361, a foreign corporation shall not be considered as a corporation unless, before such exchange, it has been established to the satisfaction of the Secretary or his delegate that such exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes. For purposes of this section, any distribution described in section 355 (or so much of section 356 as relates to section 355) shall be treated as an exchange whether or not it is an exchange.

purposes of avoidance of Federal income taxes were expressly covered by the 1932 Congress in section 901 of the Revenue Act of 1932, 47 Stat. 169, 284 (carried forward as section 1491 in the 1954 Code), which imposed a 25-percent excise tax. If the combination of section 112(k), 47 Stat. 198 (predecessor of section 367) and section 112(b)(5), 47 Stat. 196 (predecessor of section 351), reached a contribution to capital, then section 901 was unnecessary. The court further stated:

But it would be anomalous to hold that although the combination of § 112(k) and § 112(b)(5) of the 1932 Act, now I.R.C. § 351, did not reach the important subject of contributions of appreciated assets to capital or paid-in surplus by a United States citizen to a foreign corporation, which Congress felt obliged to cover separately in § 901, it did reach contributions of such assets as capital or paid-in surplus by nonresident aliens. While the alternative, *distinguishing among transfers by nonresident aliens to wholly-owned foreign corporations on the basis of whether they take stock back, is* also *anomalous*, it is less so. Indeed, the real anomaly may be in a nonresident alien's being caught in the net at all, when he could have avoided the problem altogether by selling the securities abroad and transferring the proceeds. * * * [429 F.2d at 1217. Emphasis added.]

While the Second Circuit affirmed the result of this Court, it characterized the rationale as emphasized above as anomalous. The present case also arises in the Second Circuit. Under *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we will follow a Court of Appeals decision which is squarely on point. However, the present case is not squarely on point because it does not involve a question of the applicability of section 367. Nevertheless, we believe that a reconsideration of this Court's finding in *Abegg* is warranted insofar as it relates to the exchange requirement in section 351.

The concern in *Abegg* was the application of section 367 to the transfer by a nonresident alien to his wholly owned corporation. Under these circumstances, this Court did not wish to extend the rationale of the *Morgan* and *King* cases so as to apply section 367 to such a transfer.[5] While *King* may be

---

[5]Sec. 367 had been subsequently amended to provide that contributions of capital by controlling shareholders are to be treated as an exchange. In addition, the provisions of sec. 367 have been substantially altered so that they would not apply to a transfer by a nonresident alien of property to his wholly owned foreign corporation under the circumstances in *Abegg v. Commissioner*, 50 T.C. 145 (1968), affd. on different grounds 429 F.2d 1209 (2d Cir. 1970). Sec. 367(a) and sec. 367(b) and the regulations promulgated thereunder.

distinguished because of the contemporaneous nature of the transfers and the emphasis placed on the legislative history of the basis provisions, the reasoning used by both the District Court and appellate court that the issuance of stock is meaningless where there is a wholly owned corporation is still sound. In *Morgan*, the issue was whether a reorganization had occurred. To qualify as a reorganization, the stock exchange requirements under section 112(b)(3) and (c) of the Internal Revenue Code of 1939 (corresponding to section 354(a)(1) and 356(a)(1)(B) of the 1954 Code) had to be satisfied. The court held that the exchange requirements had been met because the issuance of stock would have been a meaningless gesture where the corporation is already wholly owned. We can see no reason to interpret the phrase "exchange" differently under sections 354 and 356 than under section 351. Here, whether petitioner issued additional stock could make no difference, he still owned 100 percent of the corporation. Accordingly, we believe that the requirements of section 351 are met in the subject transfer of assets and liabilities to petitioner's wholly owned corporation, even though no additional stock was issued. To the extent that *Abegg* is inconsistent in this regard, it is overruled.

The next question is whether section 357(c) is applicable. Petitioners contend that the corporation, Universal, did not assume all the proprietorship's liabilities, in particular, the trade accounts payable. Their argument is that petitioner retained personal liability and that the corporation merely lent the funds to petitioner to pay the accounts.

Whether the corporation assumed the liabilities is a question of State law.[6] Under New York law, an express act of authorization is normally essential to corporate responsibility for preincorporation obligations. However, an exception to this rule is recognized where the same person is doing business in the corporate form and the corporation is simply the alter ego of the prior business. *Reif v. Williams Sportswear, Inc.*, 9 N.Y. 2d 387, 392, 214 N.Y.S. 2d 395, 399 (1961); *Joyce Research & Development Corporation v. Equi-Flow Division of Vibro Mfg. Co.*, 31 Misc. 2d 952, 221 N.Y.S.2d 164 (1961), affd. 15 App. Div. 2d 821 (1962), appeal dismissed 11 N.Y.2d 1011 (1962). No

---

[6]See *Beaver v. Commissioner*, T.C. Memo. 1980-429.

proof of fraudulent intent is required. *Woodland Nursing Home Corp. v. Harris*, 514 F. Supp. 110 (S.D. N.Y. 1981), affd. without published opinion sub nom. *Woodland Nursing Home Corp. v. Schweiker*, 697 F.2d 302 (2d Cir. 1982).

The liabilities in dispute in this case arose from the proprietorship's business. The corporation did in fact pay the liabilities. The record is clear that petitioner intended that the corporation should pay the liabilities in the normal course of business. A debt may be considered a section 357(c) liability, even though petitioner retains personal liability. *Smith v. Commissioner*, 84 T.C. 889, 909 (1985); *Rosen v. Commissioner*, 62 T.C. 11, 19 (1974), affd. without published opinion 515 F.2d 507 (3d Cir. 1975).[7]

Even the journal entries made some months after the transfer reflect that the liabilities were assumed by the corporation. The notation, "loan-receivable-SL" merely represents the excess of the liabilities over the adjusted basis. No note was executed by petitioner at the time for this amount nor was any interest paid. Even if petitioner had executed a note, it would have a zero basis in the hands of the corporation. *Alderman v. Commissioner*, 55 T.C. 662 (1971).[8] Therefore, we conclude that petitioners must recognize gain pursuant to section 357(c).

Petitioners contend that Edith is not liable for the deficiency attributable to the section 357(c) gain for taxable year 1977 under the provisions of section 6013(e). Section 6013(e), as amended by the Tax Reform Act of 1984 (Pub. L. 98–369, sec. 424(a), 98 Stat. 494, 801–802), was made retroactively applicable to all pending cases and provides in relevant part as follows:

SEC. 6013(e). SPOUSE RELIEVED BY LIABILITY IN CERTAIN CASES.—
    (1) IN GENERAL.—Under regulations prescribed by the Secretary, if—
        (A) a joint return has been made under this section for a taxable year,
        (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

---

[7] See also *Beaver v. Commissioner, supra.* Compare *Jackson v. Commissioner*, 708 F.2d 1402 (9th Cir. 1983), affg. in part, revg. in part, and remanding a Memorandum Opinion of this Court, where it was found that the corporation did not assume taxpayer's liability on the loans.

[8] See also *Christopher v. Commissioner*, T.C. Memo. 1984–394, where such a notation was characterized as an artificial receivable and was not a bona fide asset of the corporation.

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatment, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

Petitioners argue that Edith did not know and had no reason to know that there was a substantial understatement. Petitioners further argue that it would be inequitable to hold Edith liable under the facts and circumstances of this case.

Petitioners have the burden of proving that Edith is entitled to relief and meets all the requirements of section 6013(e). *Sonnenborn v. Commissioner*, 57 T.C. 373, 381–383 (1971). While the record is clear that Edith did not know of the understatement, it is by no means clear that she had no reason to know. No evidence was introduced that she was prevented from ascertaining the facts about the joint return she was signing. The testimony of Edith reveals that she had no interest in knowing the details, and she did not ask any questions when she began receiving checks from Universal.

More to the point, however, is the requirement that it is inequitable to hold Edith liable for the deficiency. We believe that the case of *McCoy v. Commissioner*, 57 T.C. 732 (1972), is dispositive of this issue. In that case, the deficiency was also attributable to the omission of gain recognized under section 357(c) upon the incorporation of the proprietorship of the petitioner's husband. The Court stated:

the omission here resulted not from any concealment, overreaching, or any other wrongdoing on behalf of the husband, though we appreciate that the "innocent spouse" provisions do not specifically require wrongdoing in order to be brought into play. The omission resulted from a misapprehension of the income tax laws by the preparers of the tax returns and the signatory parties. Apparently neither the husband nor the wife knew the tax consequences of the forgiveness of indebtedness here involved. They were in this respect both "innocent spouses" and we perceive no inequity in holding them both to joint and separate liability. [57 T.C. at 735.]

The foregoing language is equally applicable here. See also *Smith v. Commissioner*, 70 T.C. 651, 673 (1978). Therefore, we

find that Edith is not entitled to relief pursuant to section 6013(e).

To reflect concessions,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT, SIMPSON, GOFFE, WILBUR, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, SWIFT, GERBER, and WRIGHT, *JJ.*, agree with this opinion.

JACOBS, *J.*, did not participate in the consideration of this case.